449 F.2d 1046
 INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
EX-CELL-O CORPORATION, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 No. 24577.
 No. 24715.
 United States Court of Appeals, District of Columbia Circuit.
 Argued December 3, 1970.
 Decided March 19, 1971.
 
 Mr. John Silard, Washington, D. C., with whom Messrs. Joseph L. Rauh, Jr., Washington, D. C., and Stephen I. Schlossberg, Detroit, Mich., were on the motion for summary reversal by petitioner in number 24,577.
 Mr. Warren M. Davison, Washington, D. C., with whom Mr. Marcel Mallet-Prevost, Assistant General Counsel, was on the motion for temporary relief by respondent in number 24,715, and on respondent's opposition to the motion for summary reversal in number 24,577.
 Mr. Stanley R. Strauss, Washington, D. C., with whom Mr. Kenneth C. McGuiness, Washington, D. C., was on petitioner's opposition to the motion for temporary relief in number 24,715.
 Before BAZELON, Chief Judge, and LEVENTHAL and MacKINNON, Circuit Judges.
 PER CURIAM:
 
 
 1
 These two cases, consolidated on appeal, concern a National Labor Relations Board [NLRB] order directing Ex-Cell-O Corporation to bargain collectively with the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW).
 
 
 2
 Having found the Ex-Cell-O plant in Elwood, Indiana to be an appropriate unit for purposes of collective bargaining, the NLRB conducted an election there in October 1964; employees chose the Union as their collective bargaining representative. Ex-Cell-O contested the election in administrative proceedings which included a full trial before a Hearing Officer; the Board ultimately certified the Union as representative in October 1965.[1] Ex-Cell-O, seeking to obtain judicial review of the certification, refused to bargain with the Union.[2] The Board initiated an unfair labor practice proceeding against Ex-Cell-O,[3] and in August 1970 adopted the Trial Examiner's decision of March 1967 ordering Ex-Cell-O to bargain with the Union; however, the Board did not adopt that part of the Examiner's decision granting the Union's request for special compensatory benefits as a "make-whole" remedy for the period when Ex-Cell-O refused to bargain with the Union even after it was certified.[4]
 
 
 3
 In case No. 24,577, the Union's petition for review of the NLRB's decision not to award special compensation, the Union has moved for summary reversal, relying on our Tiidee Products — I decision.[5] In case No. 24,715 (transferred to us from the Sixth Circuit), Ex-Cell-O seeks to set aside the order directing it to bargain, and the Board — proceeding under § 10(e) of the Act[6] — has cross-applied for enforcement of its order against Ex-Cell-O, and in addition, has moved for temporary relief in the form of an order requiring Ex-Cell-O to bargain during the pendency of this litigation. We grant the motion for summary reversal and deny the motion for temporary relief.
 
 
 4
 
 The Union's Motion for Summary Reversal in No. 24,577
 
 
 
 5
 In Tiidee Products — I, supra note 5, this Court determined that the NLRB has power to award "make-whole" compensation for the period of an unlawful refusal to bargain under § 10(c) of the Act, which requires the Board "to take such affirmative action * * * as will effectuate the policies" of the Act.[7] The opinion noted that even after a bargaining representative is certified, an employer may refuse to bargain in order to avoid collective bargaining or to secure judicial review of the certification, and the obligation to bargain collectively may not be finally enforced until an unfair labor practice proceeding results in an order to bargain and an enforcement proceeding in the courts.[8] Emphasizing both the crucial importance to the statutory scheme of enforcing the obligation to bargain collectively and the need to avoid encouragement of frivolous litigation before both the Board and the reviewing courts by allowing employers to benefit from delay, this Court found that the "broad command" of § 10(c) authorizes the Board to award unions compensatory relief for harm caused by employers' manifestly unjustified refusals to bargain.
 
 
 6
 In the Ex-Cell-O case now before us, a divided Board indicated that our Tiidee Products — I decision was unsound, and maintained, contrary to our decision, that it had no power to grant "make-whole" compensation absent an amendment to the Act.[9] The Board thought that such an award would compel contractual agreement in contravention of § 8(d),[10] constitute an illegal penalty, and involve a measure of compensation too speculative to permit relief.[11] Each of these arguments was considered and rejected in Tiidee Products — I.[12]
 
 
 7
 Special relief was granted in Tiidee Products — I because the refusal to bargain was so clearly unjustified, based on an attack on the election found to be "palpably without merit."[13] This Court recognized that "make-whole" compensation may be inappropriate where the challenge is based on a "debatable question," and emphasized the NLRB's discretionary power to formulate remedies for violations of the Act.[14] Tiidee Products — I requires the Board to determine whether an employer's refusal to bargain is a flagrant violation of the Act because its legal objections are frivolous, and if so, whether "make-whole" relief or some other special remedy should be granted.[15]
 
 
 8
 In Ex-Cell-O, the NLRB also gave some indication that it was holding in the alternative that Ex-Cell-O's violation was not flagrant — because it was based on debatable questions concerning the certification of the Union — and that "make-whole" relief was therefore inappropriate. This conclusion, however, was apparently based on the Board's assumption that an employer seeking judicial review of an election could never be charged with a flagrant violation, absent "discharge of employees for union activity or other conduct in flagrant disregard of employee rights."[16] The clear import of Tiidee Products — I is that an employer's refusal to bargain based on a frivolous challenge to an election is of itself a serious and manifestly unjustified repudiation of the employer's statutory duties and denial of employees' statutory rights to collective bargaining, and that "make-whole" compensation is a proper remedy in such circumstances. The Board says that this potential liability amounts to a condition on the employer's right to litigate its challenge to a Board certification. This is no more of a condition on the right to litigate than the possibility that one may be held liable in damages, or required to forfeit bond exacted as a condition of a stay pending appeal,[17] if one's legal position is ultimately disapproved. The Court in Tiidee Products — I found imposition of this potential liability necessary to implement the goals of the Act.
 
 
 9
 The NLRB referred to another decision of this Court in which a denial of "make-whole" relief was upheld because there was a debatable question.[18] However, the Board undertook no analysis of the substance of any issue raised by Ex-Cell-O with regard to the Union's certification,[19] but instead stated:[20]
 
 
 10
 With due respect for the opinion of the Court of Appeals for the District of Columbia, we cannot agree that the application of a compensatory remedy in 8(a) (5) cases can be fashioned on the subjective determination that the position of one respondent is "debatable" while that of another is "frivolous." What is debatable to the Board may appear frivolous to a court, and vice versa. Thus, debatability of the employer's position in an 8(a) (5) case would itself become a matter of intense litigation.
 
 
 11
 It is precisely this determination which Tiidee Products — I approves, noting that courts should accord the usual latitude to the Board in the exercise of its remedial discretion.
 
 
 12
 We therefore grant the Union's motion for summary reversal of the NLRB's decision insofar as it denies "make-whole" compensation to the Union on the ground that the denial was in direct conflict with this Court's Tiidee Products — I decision, and remand the case to the Board for further proceedings not inconsistent with this opinion and the opinion in Tiidee Products — I, including express determinations whether Ex-Cell-O's objections to the certification were frivolous or fairly debatable, and whether "make-whole" compensation or some other special remedy is appropriate.[21]
 
 
 13
 
 The NLRB's Motion for Temporary Relief in No. 24,715
 
 
 
 14
 The NLRB has applied for temporary enforcement, pending disposition of this appeal, of its order requiring Ex-Cell-O to bargain with the Union. The Act authorizes courts to grant temporary injunctive relief of this nature. Prior to a final Board order to cease and desist from an unfair labor practice, the Board may request a district court to grant temporary relief against the practice under § 10(j).[22] After the Board's order and initiation of an enforcement proceeding in a court of appeals, the court entertaining such a proceeding may grant temporary relief under § 10(e).[23]
 
 
 15
 Section 10(e) confers a broad power on the courts to give "just and proper" temporary relief to assure obedience to NLRB orders and effectuate the policies of the Act.[24] While such relief is more readily granted when the Board seeks to maintain the status quo,[25] it is also available to prevent continued violation of the Act during the pendency of an appeal. See, e. g., NLRB v. Beverage-Air Co., 391 F.2d 255, 256 (4th Cir. 1968) (§ 10(e) injunction against enforcement by employer of no-solicitation rule granted). Ex-Cell-O contends that this remedy should not be available to require an employer to engage in collective bargaining when the employer insists that the NLRB's bargaining order is unenforceable, and seeks judicial review. But the fact that an employer claims its refusal to bargain is "technical," reflecting only the desire to obtain review of a union's certification, does not immunize the employer from injunctive relief if its claims are weak.[26]
 
 
 16
 Enforcement of the employer's obligation to bargain is crucial for implementation of the policies of the Act,[27] and the usually strict standards for equitable relief in private actions do not apply when these important public purposes are threatened.[28] Since the Government is not required to make a showing of irreparable injury when it seeks an injunction to give effect to an Act of Congress, in order to obtain temporary relief under § 10(j) or § 10(e), the Board need only establish that there is reasonable cause to believe that the Act has been violated, and that remedial purposes of the law will be served by pendente lite relief.[29]
 
 
 17
 In cases arising in district courts under § 10(j), decisions take account of the erosion of union strength that may result from an unjustified refusal to bargain.[30] Temporary injunctive relief to compel bargaining is especially significant then because it can be sought soon after the election in which the union was chosen as collective bargaining representative. In cases in courts of appeals under § 10(e), the increased probability of success on the merits which usually accompanies a Board decision provides additional basis for a temporary order to bargain. Thus, the Third Circuit, acting under § 10(e), temporarily enjoined a union from continuing a refusal to bargain that rested on a position with "no substantial basis."[31]
 
 
 18
 Bargaining pendente lite may lead to resolution of issues and result in agreement, or at least expedite ultimate agreement. That possibility was a substantial factor underlying our decision requiring a union to continue in mediation, in accordance with its obligation as declared by a government agency, during the determination of a challenge to the agency's determination that was not likely to succeed. International Ass'n. of Machinists & Aerospace Workers, AFL-CIO v. National Mediation Bd. [National Airlines, Inc.], 138 U.S.App.D.C. 96, 101-102, 425 F.2d 527, 532-533 (1970). In that case, however, the parties each recognized an initial duty to confer with each other; in the absence of such recognition, their meeting would be unlikely to be productive unless a court acts, as the Third Circuit did, to provide what is in effect a ruling on the merits, or at least such a strong indication that it would be reasonable to anticipate that the losing party would abandon its previous resistance.
 
 
 19
 For this Court to provide that kind of ruling under § 10(e) in this case, we would have to obtain and examine an evidentiary record.[32] We would and should be ready to undertake this burden in view of the declared public interest in collective bargaining, an interest of such importance as to lead this Court in Tiidee Products — I, supra note 5, to remand for Board consideration of special compensatory remedies for employees when the employer had undermined the public interest through frivolous delay.[33] But a court may not properly be called upon to provide interim relief on a preliminary basis when there has been an unusual administrative delay, here some six years in duration, including three years when the Board was considering the Trial Examiner's decision, especially his grant of "make-whole" relief. This is not to suggest that we agree with Ex-Cell-O's contention that the passage of time renders enforcement of the bargaining order inappropriate.[34] The Board's delay should not be allowed to penalize the employees.[35] In this case, however, the unusual delay was ascribable in large part to the Union's desire to make this a test case on the "make-whole" remedy issue, and the Union was apprised by the Trial Examiner in 1966 that this might delay relief. Of course, the Union could not have foreseen how protracted the Board's consideration would become. And in retrospect, the Board probably should have granted the relief that was clearly proper, while it held for further consideration the Union's claim for "make-whole" compensation. But these are yesterday's snows.
 
 
 20
 As far as today's problems are concerned, we are aware that a strike began at Ex-Cell-O's facilities in September 1970 when Ex-Cell-O refused to bargain after the Union had obtained authorization cards from a majority of employees. Ex-Cell-O, which claims that two plants instead of one now constitute the appropriate bargaining unit, petitioned the NLRB to conduct a new election immediately, but its request was denied. Ex-Cell-O's tactics as of now must take account of the remedy afforded by our Tiidee Products — I decision, supra note 5, for manifestly unjustified refusals to bargain.
 
 
 21
 On balance, we conclude that we should proceed in this case, not with interim relief, but by expedited consideration. We are today entering an order establishing an early date for argument. The Board's motion for temporary relief under § 10(e) is denied.
 
 
 22
 So ordered.
 
 
 
 Notes:
 
 
 [1]
 See 29 U.S.C. § 159 (1964).
 
 
 [2]
 There is no direct judicial review of certification proceedingsSee American Fed'n. of Labor v. NLRB, 308 U.S. 401, 406, 409, 60 S.Ct. 300, 84 L.Ed. 347 (1940); NLRB v. Falk Corp., 308 U.S. 453, 458-459, 60 S.Ct. 307, 84 L.Ed. 396 (1940); NLRB v. International Bhd. of Elec. Workers, 308 U.S. 413, 60 S.Ct. 306, 84 L.Ed. 354 (1940). To obtain judicial review, Ex-Cell-O had to refuse to bargain, be charged with an unfair labor practice, and ultimately, be ordered to cease and desist from that practice. Such an order is reviewable at the behest of either the Board or contending parties. 29 U.S.C. § 160(e) & (f) (1964).
 
 
 [3]
 See 29 U.S.C. §§ 158(a)(1) & (5), 160 (a)-(d) (1964).
 
 
 [4]
 Ex-Cell-O Corp., 185 N.L.R.B. No. 20, 74 L.R.R.M. 1740, 5 CCH Lab.L.Rep. ¶ 22,251, at 28,669-28,678 (Case No. 25-CA-2377, Aug. 25, 1970, amended Sept. 1, 1970)
 
 
 [5]
 International Union of Elec., Radio & Machine Workers, AFL-CIO v. NLRB [Tiidee Prods., Inc. — I], 138 U.S.App. D.C. 249, 426 F.2d 1243 (1970), cert. denied, 400 U.S. 950, 91 S.Ct. 239, 27 L.Ed. 2d 256 (1970)
 
 
 [6]
 29 U.S.C. § 160(e) (1964)
 
 
 [7]
 29 U.S.C. § 160(c) (1964)
 
 
 [8]
 See 29 U.S.C. §§ 158, 160 (1964); note 2 supra.
 
 
 [9]
 Ex-Cell-O Corp.,supra note 4, 5 CCH Lab.L.Rep. at 28,673.
 
 
 [10]
 Section 8(d), 29 U.S.C. § 158(d) (1964), provides that the obligation to bargain collectively "does not compel either party to agree to a proposal or require the making of a concession."See H. K. Porter Co. v. NLRB, 397 U.S. 99, 90 S.Ct. 821, 25 L.Ed.2d 146 (1970).
 
 
 [11]
 Ex-Cell-O Corp.,supra note 4, 5 CCH Lab.L.Rep. at 28,671-28,673.
 
 
 [12]
 Indeed, the opinion carefully defined the remedy in order to avoid such objections. 138 U.S.App.D.C. at 259, 426 F.2d at 1253
 
 
 [13]
 138 U.S.App.D.C. at 256, 426 F.2d at 1250See also International Union of Elec., Radio & Machine Workers, AFL-CIO v. NLRB [Tiidee Prods., Inc. — II], 142 U.S.App.D.C. 270-271, 440 F.2d 298-299 (1970); Food Store Employees Union, Local No. 347, etc., AFL-CIO v. NLRB [Heck's, Inc.], 139 U.S.App.D.C. 383, 384-385, 433 F.2d 541, 542-543 (1970).
 
 
 [14]
 138 U.S.App.D.C. at 254-255, 256, 259, 426 F.2d at 1248-1249, 1250, 1253
 
 
 [15]
 138 U.S.App.D.C. at 257 & n.11, 259, 426 F.2d at 1251 & n.11, 1253See also Phelps Dodge Corp. v. NLRB, 313 U.S. 177, 194, 197, 61 S.Ct. 845, 85 L.Ed. 1271 (1941).
 
 
 [16]
 Ex-Cell-O Corp.,supra note 4, 5 CCH Lab.L.Rep. at 28,672.
 
 
 [17]
 See Fed.R.App.P. 8(b) (security for stay pending appeal in civil case); Fed. R.App.P. 18 (security for stay pending review in agency case). See also Fed.R. Civ.P. 65(c) (security required upon issuance of temporary restraining order or preliminary injunction).
 
 
 [18]
 United Steelworkrs of America, AFL-CIO v. NLRB [Quality Rubber Mfg. Co.], 139 U.S.App.D.C. 146, 148-149, 430 F.2d 519, 521-522 (1970)See also Southwest Regional Joint Bd., Amalgamated Clothing Workers, AFL-CIO [Levi Strauss & Co.], 142 U.S.App.D.C. 337, 345-346, 441 F.2d 1027, 1035-1036 (1970).
 
 
 [19]
 The Board's only specific remark on the "flagrancy" of Ex-Cell-O's violation did not even refer to the instant case. Ex-Cell-O Corp.,supra note 4, 5 CCH Lab.L. Rep. at 28,671 ("the record indicates that this Respondent responsibly fulfills its legally established collective-bargaining obligations").
 
 
 [20]
 Id., 5 CCH Lab.L.Rep. at 28,672.
 
 
 [21]
 InTiidee Products — I and four other cases in which the Board's order was issued prior to our Tiidee Products — I decision, this Court itself evaluated the employer's conduct and remanded only if it was flagrant. See International Union of Elec., Radio & Machine Workers, AFL-CIO v. NLRB [Tiidee Prods., Inc. — II], supra note 13; Southwest Regional Joint Bd., Amalgamated Clothing Workers, AFL-CIO v. NLRB [Levi Strauss & Co.], supra note 18; United Steelworkers of America, AFL-CIO v. NLRB [Quality Rubber Mfg. Co.], supra note 18; Food Store Employees Union, Local No. 347, etc., AFL-CIO v. NLRB [Heck's Inc.], supra note 13. In its decisions after Tiidee Products — I the Board should conduct its own analysis of the issues as part of its exercise of remedial discretion.
 
 
 [22]
 29 U.S.C. § 160(j) (1964)
 
 
 [23]
 29 U.S.C. § 160(e) (1964)
 
 
 [24]
 See Senate Comm. on Educ. & Labor, 74th Cong., 1st Sess., Comparison of S. 2926 (73d Congress) and S. 1958 (74th Congress) 35, 37 (Comm.Print., Mar. 11, 1935), in 1 Legislative History of the National Labor Relations Act 1361, 1364 (1935). See also Sears, Roebuck & Co. v. Carpet, etc., Layers, Local No. 419, AFL-CIO, 397 U.S. 655, 659, 90 S.Ct. 1299, 25 L.Ed.2d 637 (1970).
 
 
 [25]
 See NLRB v. Nickey Chevrolet Sales, Inc., No. 18,457 (7th Cir., June 9, 1970) (unreported) (temporary relief under § 10 (e) granted in order to prevent continued unilateral alterations by the employer in terms and conditions of employment without affording the union an opportunity to bargain with regard to such changes), discussed in Ex-Cell-O's Opposition to Motion for Temporary Relief at 14-15. Maintenance of the status quo has often been an important consideration in determining whether to grant temporary injunctive relief prior to a Board order under § 10(j). See, e. g., Minnesota Mining & Mfg. Co. v. Meter, for and on Behalf of NLRB, 385 F.2d 265, 270-273 (8th Cir. 1967) (reversing grant of § 10(j) injunction); Angle v. Sacks, for and on Behalf of NLRB, 382 F.2d 655, 660 (10th Cir. 1967) (affirming grant of § 10(j) injunction, as modified).
 
 
 [26]
 See Lebus, for and on Behalf of NLRB v. Manning, Maxwell & Moore, Inc., 218 F.Supp. 702, 709 (W.D.La.1963) (§ 10 (j) injunction granted):
 
 
 [6]
 It may be fairly anticipated that, unless enjoined, Respondent will continue to fail and refuse to bargain collectively in good faith with the Union as the designated representative of its employees. The Court is fully aware of Respondent's defense that it is merely pursuing the statutory scheme of review and that its violation is only technical
 
 
 [7]
 Unless the continuation of the aforesaid failure to bargain is restrained, a serious flouting of the Act will continue with the result that enforcement of important provisions of the Act and of the public policy will be thwarted before the matter can be handled through the regular procedures of Board order and enforcement decree. Unless injunctive relief is obtained, it it may be fairly anticipated that Respondent will continue its refusal to bargain during the proceedings before the Board and during proceedings before a court of appeals for an enforcing decree, so that before it is placed under any legal restraint to bargain with the Union, the Union's majority status may have been so dissipated by the unfair labor practices that the Union will be unable successfully to function as an effective collective bargaining representative of the employees, to the detriment of the policies of the Act and the interests of the employees involved
 
 
 [27]
 See NLRB v. American Nat'l. Ins. Co., 343 U.S. 395, 402, 72 S.Ct. 824, 96 L.Ed. 1024 (1952).
 
 
 [28]
 See Virginian Ry. v. System Fed'n. No. 40, 300 U.S. 515, 552, 57 S.Ct. 592, 81 L. Ed. 489 (1937).
 
 
 [29]
 See NLRB v. Aerovox Corp., 389 F.2d 475, 477 (4th Cir. 1967) (§ 10(e) relief denied). The Supreme Court had occasion to consider the standard for relief under § 10(j) in McLeod, Regional Director, NLRB v. General Elec. Co., 385 U.S. 533, 87 S.Ct. 637, 17 L.Ed.2d 588 (1967). In that case, the District Court issued an injunction on the ground that there was reasonable cause to believe the Act had been violated and the public interest required "swifter corrective action than the normal process of Board adjudication and court enforcement" could provide. The Second Circuit reversed on the ground that an injunction was proper only where "necessary to preserve the status quo or to prevent any irreparable harm." Justice Harlan issued a stay, and the Supreme Court granted certiorari; but subsequent developments resulted in a remand rather than a decision.
 Whatever the appropriate standard is under § 10(j), temporary relief may be granted under § 10(e) upon a showing that the Board is likely to succeed in enforcing its order, and that interim relief is necessary to achieve the remedial purposes of the Act.
 
 
 [30]
 See Brown, for and on Behalf of NLRB, v. Pacific Tel. & Tel. Co., 218 F.2d 542, 544 (9th Cir. 1954) (denial of § 10(j) injunction reversed); Lebus, for and on Behalf of NLRB v. Manning, Maxwell & Moore, Inc., supra note 26, 218 F.Supp. at 706, 709.
 
 
 [31]
 NLRB v. International Ladies' Garment Workers' Union, AFL-CIO, 44 L. R.R.M. 2003, 36 CCH Lab.Cas. ¶ 65,365, at 66,307 (3d Cir. 1959);see NLRB v. Clement Bros. Co., No. 27,892 (5th Cir., July 16, 1969) (unreported) (temporary relief under § 10(e) granted where Board was very likely to succeed in enforcing its order), discussed in Ex-Cell-O's Opposition to Motion for Temporary Relief at 15-16. See also NLRB v. Heck's, Inc., 390 F.2d 655 (4th Cir. 1968) (§ 10(e) relief denied because Board's claim had already been decided adversely to it).
 
 
 [32]
 Consideration of the record would be necessary to assure the Court of the probability that the Board will succeed on the issues raised by Ex-Cell-O with respect to the certification proceeding. Ex-Cell-O asserts that the record does not support the Board's finding that the alleged misrepresentations by the Union on the eve of the election were not substantially untrue or did not substantially affect the election. It also claims that certain employee testimony should have been permitted at the hearing and that the record of the Acting Regional Director's initial investigation should have been disclosed
 
 
 [33]
 Where it is likely that the Board will issue a bargaining order or that such an order will be enforced, temporary enforcement of the obligation to bargain under § 10(j) or § 10(e) would deter the employer from continued, nonmeritorious challenges to the union's certification. Liberal use of these remedies in appropriate cases would reduce the period of employer delay and might mitigate the need for awarding the "make-whole" compensation authorized inTiidee Products — I.
 
 
 [34]
 To the contrary, see NLRB v. Katz, 369 U.S. 736, 748 n. 16, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962);cf. NLRB v. Gissel Packing Co., 395 U.S. 575, 610-616, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969). We are not called upon to consider whether the Board, if it grants "make-whole" relief in complying with Tiidee Products — I, supra note 5, might then properly proceed forthwith with a new election.
 
 
 [35]
 See NLRB v. J. H. Rutter-Rex Mfg. Co., 396 U.S. 258, 264-266, 90 S.Ct. 417, 24 L.Ed.2d 405 (1969).
 
 
 MacKINNON, Circuit Judge (dissenting):
 
 23
 In my opinion, this case should be disposed of in the same manner as Quality Rubber Manufacturing,[1] where Tiidee — I[2] was distinguished and the refusal of the NLRB to grant the requested monetary relief in an 8(a) (5) case was upheld because the employer's refusal to bargain was caused by his desire "only to obtain an authoritative determination of the validity of the Board's decision." In Tiidee — I, this court reversed the Board and ordered monetary relief for a flagrant 8(a) (5) violation, but in this case, as in Quality Rubber, we are being asked to grant monetary relief for a non-flagrant 8(a) (5) violation. The only common denominator between this case and Tiidee — I is that both involved a refusal to bargain collectively but Tiidee — I allegedly involved "clear antiunion animus," illegal "threats to close the plant," "coercive actions taken against its employees," "layoffs, discharges and changes in production quotas," a "refusal to bargain [that] was a clear and flagrant violation of the law" based on "patently frivolous" objections, "intransigence" and a "brazen refusal to bargain, in violation of solemn obligations [stemming from a prior agreement to abide by the decision of the regional director]."[3] No such flagrant conduct exists here. In this case the Board found that Ex-Cell-O "responsibly fulfills its legally established collective bargaining obligations. * * * [Ex-Cell-O] merely sought judicial affirmance of the Board's decision that the election of October 22, 1964 should not be set aside on * * * [its] objections." This is the only way in which Ex-Cell-O could obtain a judicial review of the validity of the election. The election was close. Of 196 ballots cast, 102 were cast in favor of the union, 93 were cast against the union and one ballot was challenged. Thus a switching of 5 votes out of 196 cast would have changed the result. The election was held on Thursday, October 22, 1964. To challenge this result Ex-Cell-O filed timely objections criticizing a letter mailed by the union to the employees on October 19, 1964 (the Monday before the election) and a statement made by a union representative at a union meeting held on October 18, 1964. Ex-Cell-O contended that the union in the letter had made material misrepresentations of fact, i.e., (1) that Ex-Cell-O had deprived the employees of wage increases amounting to 14¢ per hour, and (2) that Ex-Cell-O was hiring men to fill jobs women had previously performed and intended to continue doing so. It was also originally contended (3) that the union had told employees that if the union lost the election Ex-Cell-O's principal customer would stop its purchases. It is obvious from their force that any one of these allegations might have influenced enough voters to alter the outcome of the election and, in a proper setting, the fact that the allegations were made could have required that the election be set aside.[4]
 
 
 24
 On October 28, 1965, the NLRB overruled Ex-Cell-O's objections, adopted the hearing examiner's findings and recommendations and affirmed the certification of the union as the exclusive representative of the employees. On the following day, Ex-Cell-O wrote to the union as follows:
 
 
 25
 We have received the Labor Board's decision concerning our objections to the conduct of the Union election held October 22, 1964. As you know, the only way the Labor Board's decision in this case can be reviewed is through a technical refusal to bargain, and consequently we are unable to meet with you and bargain until the review procedure is carried out.
 
 
 26
 Subsequently the union on November 18, 1965 filed charges alleging that Ex-Cell-O was refusing to bargain collectively with it in violation of 8(a) (5) and (1) of the Act.
 
 
 27
 Ex-Cell-O's position in this regard recognized the statutory scheme established by the National Labor Relations Act, whereby an employer who doubts the propriety of a certification by the Board has no explicit statutory right to seek direct judicial review of that certification. Judicial review becomes available only after the Board has determined that in failing to bargain with a certified union the employer has committed a violation of 8(a) (5). Thus an employer who truly entertains doubts concerning the propriety of a Board certification can have those doubts judicially assuaged only by refusing to bargain and appealing a subsequent finding by the Board that in so doing it violated 8(a) (5).[5]
 
 
 28
 Under such circumstances, it seems clear to me that Ex-Cell-O's violation of 8(a) (5) in this case cannot constitute, per se, a flagrant violation of that section. On the surface, at least, the majority opinion does not say that it does. Rather, it states that it is remanding the case to the Board
 
 
 29
 for further proceedings not inconsistent with this opinion and the opinion in Tiidee Products — I, including express determinations whether Ex-Cell-O's objections to the certification were frivolous or fairly debatable, and whether "make-whole" compensation or some other special remedy is appropriate.[6]
 
 
 30
 A fair reading of the Board's order, however, indicates that it has already done precisely what the majority is here ordering it to do. In its order, the Board prefaced its statement of reasons for rejecting the union's request for monetary relief by saying that its broad authority under section 10(c) to "take such affirmative action * * * as will effectuate the policies of this Act" was limited in three crucial respects:
 
 
 31
 It is not so broad * * * as to permit the punishment of a particular respondent or class of respondents.
 
 
 32
 Nor is the statutory direction to the Board so compelling that the Board is without discretion in exercising the full sweep of its power, for it would defeat the purposes of the Act if the Board imposed an otherwise proper remedy that resulted in irreparable harm to a particular respondent and hampered rather than promoted meaningful collective bargaining. Moreover, as the Supreme Court recently emphasized, the Board's grant of power does not extend to compelling agreement. * * * It is with respect to these three limitations upon the Board's power to remedy a violation of Section 8(a) (5) that we examine the UAW's requested remedy in this case. (Emphasis added).
 
 
 33
 The second limitation indicated by the Board clearly shows that it recognized it was required to distinguish between wrongdoers, i. e., to make the distinction which the majority is here commanding it to make. Not only did it recognize that it was required to make such distinctions generally, but it made them with regard to Ex-Cell-O. "In the first place," it said, "there is no contention that this respondent acted in a manner flagrantly in defiance of the statutory policy." It stated further that
 
 
 34
 an employer or a union, which engages in conduct later found in violation of the Act, does so at the peril of ultimate conviction and responsibility for a make-whole remedy. But the validity of a particular Board election tried in an unfair labor practice case is not, in our opinion, an issue on the same plane as the discharge of employees for union activity or other conduct in flagrant disregard of employee rights. There are wrongdoers and wrongdoers. Where the wrong in refusing to bargain is, at most, a debatable question, though ultimately found a wrong, the imposition of a large financial obligation on such a respondent may come close to a form of punishment for having elected to pursue a representation question beyond the Board and to the courts. (Emphasis added).
 
 
 35
 It then went on to analogize Ex-Cell-O's conduct in this case to that of Quality Rubber.
 
 
 36
 Later in its opinion, the Board did express the opinion that the distinction between "fairly debatable" and "frivolous" objections to a Board certification was, as a general matter, an unworkable one.[7] Nevertheless, it seems clear to me that in this case, the Board has made the distinction and found that Ex-Cell-O, like Quality Rubber, had adopted a "fairly debatable" position. Even were I to agree with the rationale of Tiidee — I, then, I would be forced to conclude that the present case was not an appropriate one for imposing the "make-whole" remedy there approved. In any event, I would certainly not remand this case to the Board and compel it to make again the determinations it has already carefully made.
 
 
 37
 I do not, of course, agree with the rationale of Tiidee — I, as I stated in my dissent to that decision. In my opinion, the question of controlling significance in this case revolves around the national policy, declared in the Act which is implicit in section 8(a) (5)[8] and (d)[9] of the Act. This policy was considered in H. K. Porter, which pointed out that the Board was without power to compel a company or a union "to agree to any substantive contractual provision of a collective-bargaining agreement."[10] In my opinion the limitations imposed by this statute would be breached by the affirmation of the direction to fashion monetary relief which is set forth in the majority opinion. In so directing, the majority opinion anticipates the complaint that it is exceeding limitations imposed by section 8(d) and H. K. Porter, and in defense of its action argues that it does not transgress the statutory limitation because it is merely ordering relief equal to what would have been agreed to. But since the obligation to engage in collective bargaining does not carry with it the obligation or guarantee to reach any agreement, it is improper to base a remedy on a compelled agreement that was not required to be reached by the statutory provision the union claims was violated. To uphold the remedy here ordered by such verbal circumlocution would be to achieve by rhetoric that which is prohibited in fact.
 
 
 38
 There is no question, as the examiner and the Board stated, that in some cases the power of the National Labor Relations Board is inadequate to deal with certain cases that confront it. That inadequacy, however, stems from the statute which is controlling and the statute does not authorize the Board to settle all cases that confront it. Rather than imposing such broad power in the Board, or in any other person, the statute makes collective bargaining between the parties, and not judicial or administrative decisions by the court or Board, the final arbiter of the respective issues between the contending parties and this does not compel that there be any agreement between them. This should be perfectly apparent to any person who will merely observe the situation that has confronted the nation in our numerous recurring national public interest strikes. Since the statute does not confer power in the Board or in the courts to compel agreement or concession on any points, the void in this respect is to be filled, if at all, by congressional legislation and not by judicial legislation. As Mr. Justice Black remarked in H. K. Porter:
 
 
 39
 [I]t is the job of Congress, not the Board or the courts, to decide when and if it is necessary to allow governmental review of proposals for collective-bargaining agreements and compulsory submission to one side's demands. The present Act does not envision such a process.[11]
 
 
 40
 It was just such usurpation of power under the Wagner Act, supported by illadvised judicial decisions, as is now proposed by the majority opinion, that led to the 1947 reforms enacted in the Labor Management Relations Act of 1947. But there is even less basis now for the exercise of such power by the Board because section 8(d) of the Act specifically declares that neither party is required to agree to any proposal or to make any concession and Congress made a similar declaration part of the legislative history of the Act.[12] Since Congress has not imposed upon any party the obligation to come to any agreement or to make any concession in any collective bargaining that may be required, the holding that a party who refuses to bargain, for what it and the Board consider to be fairly appealable reasons, may be subjected to damages on the basis of a spurious contractual agreement in which the agreement, terms and conditions would be determined by the Board, is to impose a penalty, in the name of securing statutory compliance, that is greater than the result required by the statute. The penalty thus imposes a liability upon the company in excess of that imposed by the statute and does it through means which violate the public policy which the statute declares. In other words, the complainant would get more as a penalty than the company is required to give by fully complying with the Act and this would all be accomplished by the fiction that the company would have agreed to an agreement it was not required to agree to. Such basis for relief thus has no statutory base and is also grounded in factors which are largely speculative. I would affirm the Board.
 
 
 
 Notes:
 
 
 [1]
 United Steelworkers of America, AFL-CIO v. N. L. R. B., 139 U.S.App.D.C. 146, 430 F.2d 519 (1970)
 
 
 [2]
 International Union of E., R. & M., AFL-CIO (Tiidee) v. N. L. R. B., 138 U.S.App.D.C. 249, 426 F.2d 1243, cert. denied, 400 U.S. 950, 91 S.Ct. 239, 27 L.Ed.2d 256 (1970)
 
 
 [3]
 Id. at 252-255, 426 F.2d at 1246-1249.
 
 
 [4]
 Compare, e. g., Gallenkamp Stores Co. v. N. L. R. B., 402 F.2d 525 (9th Cir. 1968); N. L. R. B. v. Trancoa Chem. Corp., 303 F.2d 456 (1st Cir. 1962), with Follett Corp. v. N. L. R. B., 397 F.2d 91 (7th Cir. 1968); S. D. Warren Co. v. N. L. R. B., 353 F.2d 494 (1st Cir. 1965), cert. denied, 383 U.S. 958, 86 S.Ct. 1222, 16 L.Ed.2d 300 (1966).
 
 
 [5]
 American Federation of Labor v. N. L. R. B., 308 U.S. 401, 60 S.Ct. 300, 84 L. Ed. 347 (1940);see National Labor Relations Act § 9(d), 29 U.S.C. § 159(d) (1964). When the Taft-Hartley Amendments were under consideration, a proposed House amendment would have provided for direct review of certification proceedings. H.R. 3020, 80th Cong., 1st Sess. § 10(f) (1947); see H.R.Rep. No. 245, 80th Cong., 1st Sess. 59-60 (1947). The amendment was approved by the House, but rejected by the Senate and conference committee. See H.R. Conf. Rep. No. 510, 80th Cong., 1st Sess., 56-57 (1947). See generally Leedom v. Kyne, 358 U.S. 184, 191-201, 79 S.Ct. 180, 3 L. Ed.2d 210 (1958) (Brennan, J., dissenting).
 
 
 [6]
 Novel demands for monetary relief on the basis here demanded by the union have been gratuitously endowed by someone with the catch phrase "make-whole" compensation. Such label is a self-serving characterization obviously intended to forestall objection to the amount of damages demanded by characterizing the demand with a favorable title upon the premise that no person could reasonably object to a person being made "whole." In some circumstances the label may also operate to focus attention more on the question as to whether any monetary relief should be granted than on the question as to the amount of relief
 
 
 [7]
 Contrary to the intimations of the majority, however, the Board's rejection of the distinction was not based on its conclusion that it was incapable of making such a distinction in theory or in practiceCompare majority opinion at page 1050 and n. 21, supra. Clearly the Board's opinion indicates that such distinctions can be made, and the Board constantly makes similar distinctions in 8(a) (5) cases where the sole issue is the employer's "good faith." Here the Board was concerned solely with the wisdom of injecting into 8(a) (5) cases another issue which would itself become "a matter of intense litigation" requiring more time to be expended in such cases by an agency which is presently operating nearly at full capacity. Such an additional expenditure of time would also serve to lengthen the period between the time an election is conducted and the time the parties begin to bargain.
 
 
 [8]
 It shall be an unfair labor practice for an employer —
 to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159 (a) of this title.
 29 U.S.C. § 158(a) (5) (1964).
 
 
 [9]
 For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, butsuch obligation does not compel either party to agree to a proposal or require the making of a concession * * *.
 29 U.S.C. § 158(d) (1964) (emphasis added).
 
 
 [10]
 H. K. Porter Co. v. N. L. R. B., 397 U.S. 99, 102, 90 S.Ct. 821, 25 L.Ed.2d 146 (1970)
 
 
 [11]
 Id. at 109, 90 S.Ct. at 826.
 
 
 [12]
 See also H.R.Conf.Rep. No. 510, 80th Cong., 1st Sess. 34 (1947):
 This mutual obligation [to engage in collective bargaining] was not to compel either party to agree to a proposal or require the making of a concession.