**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**GOOD FOODS MANUFACTURING & PROCESSING CORPORATION, CHICAGO LAMB PACKERS, INC.—DIVISION, Respondent.**

**GOOD FOODS MANUFACTURING & PROCESSING CORPORATION, CHICAGO LAMB PACKERS, INC.—DIVISION, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**LOCAL UNION NO. 87, AMALGAMATED MEAT CUTTERS & BUTCHER WORKMEN OF NORTH AMERICA, AFL–CIO, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

Nos. 73–1196, 73–1248, 73–1280.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 16, 1974.

Decided March 15, 1974.

🔑636

Aldus S. Mitchell, Charles Orlove, Chicago, Ill., for Good Foods, etc.

Elliott Moore, Acting Asst. Gen. Counsel, Michael F. Messitte, Atty., National Labor Relations Board, Washington, D. C., for NLRB.

Before HASTINGS, Senior Circuit Judge, and PELL and SPRECHER, Circuit Judges.

SPRECHER, Circuit Judge.

The predecessor, Chicago Lamb Packers, employed seven butchers who were represented by Local Union No. 87, Amalgamated Meat Cutters & Butcher Workmen.[1] Early in 1970, Chicago Lamb Packers was sold to Good Foods Manufacturing & Processing Corporation. Chicago Lamb Packers ceased doing business on Friday, March 28, 1970; on the following Monday, April 1, 1970, Good Foods continued the business at the same location.

I

On July 29, 1970, the Union filed charges of various unfair labor practices against Good Foods. The company responded to the complaint and participated in the hearing before the administrative law judge. He found that Good Foods was a successor to Chicago Lamb Packers, and that Good Foods was guilty of the following violations of the National Labor Relations Act:

1. Section 8(a)(3), by discharging six butchers for their union activities;

2. Section 8(a)(5), by refusing to bargain with the Union;

3. Section 8(a)(1), by the above conduct, by coercively interrogating its employees and by threatening to close its plant.

Good Foods did not file exceptions to the administrative law judge's findings and conclusions; it did not file a brief with the Board. The Board found the same violations plus an additional violation of sections 8(a)(1) and (5) in making unilateral changes in wages and other terms and conditions of employment without prior consultation with the Union.

The Board's original order, reported at 195 NLRB No. 83 (1972), was filed

---

1. The Union was certified as bargaining representative in May 1965. The last contract covered the period from October 1, 1968 until October 1, 1971.

before the decision in NLRB v. Burns International Security Services, Inc., 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972). Following *Burns*, the Board issued a notice to show cause regarding modifications of its order which might be required by *Burns*. Good Foods did not respond to the notice. The Board nevertheless modified its order, reported at 200 NLRB No. 86 (1972). Good Foods did not ask for reconsideration of either order.

Section 10(e) (29 U.S.C. § 160(e)), which governs enforcement proceedings in the courts of appeals, states in part:

> No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances.

■ Good Foods urges us to excuse its failure to file exceptions because its attorney was busy appealing his own criminal conviction, defending himself in disbarment proceedings and handling cases for other clients. This is exactly the sort of circumstances courts have refused to call extraordinary under section 10(e). NLRB v. Local 74, Marble, Slate & Stone Polishers, 471 F.2d 43 (7th Cir. 1973); NLRB v. Ferraro's Bakery, Inc., 353 F.2d 366 (6th Cir. 1965); NLRB v. Izzi, 343 F.2d 753 (1st Cir. 1965); NLRB v. Mooney Aircraft Inc., 310 F.2d 565 (5th Cir. 1962). The attorney was free on bond during the entire period of the administrative proceedings. Other members of his law firm, who now represent Good Foods, surely were available to assist him.

There are only two categories of cases where courts have found extraordinary circumstances. Filing exceptions one or two days late has been excused when the delay was caused by early mail pickup,

snow storm or strike. NLRB v. Marshall Maintenance Corp., 320 F.2d 641 (3d Cir. 1963); NLRB v. Central Mercedita, Inc., 273 F.2d 370 (1st Cir. 1959); NLRB v. Woodworkers Local 13–433, 238 F.2d 378 (9th Cir. 1956). Here no exceptions were ever filed.

Failure to file exceptions to the administrative law judge's findings sometimes is excused where those findings were favorable to the petitioner, were subsequently reversed by the Board, and petitioner had no reason to file exceptions to a decision in its favor. NLRB v. Teamsters Local 282, 412 F.2d 334, 337 n. 2 (2d Cir. 1969), cert. denied, 396 U.S. 1038, 90 S.Ct. 682, 24 L.Ed.2d 682 (1970); *contra*, NLRB v. Cast-A-Stone Products Co., 479 F.2d 396 (4th Cir. 1973).

■ Good Foods attempts to bring itself into this category by stating that the administrative law judge's decision "was acceptable to Good Foods as a compromise." [2] While it is true that the Board found an additional violation and ordered additional remedies, the administrative law judge's decision was basically adverse to Good Foods: it found Good Foods was a successor employer guilty of numerous violations and it rejected the only defense Good Foods presented at the hearing.[3] The major factual findings that Good Foods urges this court to review—namely, the facts of successorship, of majority representation by the Union and of unilateral changes by the employer—were initially determined against Good Foods by the administrative law judge. The time to contest these findings was after they were made, not for the first time before this court.

Good Foods also offers the announcement of the *Burns* decision as an "extraordinary circumstance" which excused it from petitioning the Board for

2. Good Foods' first brief, p. 6.

3. The stock of Good Foods is owned by a corporation whose stock is held by a religious corporation, "Muhammad's Temple No. 2 of the Holy Temple of Islam," a Muslim organization headed by Elijah Muhammad. The administrative law judge summarized Good Foods' ultimate defense as an argument that the company's conduct must be excused because of its officers' religious beliefs.

a rehearing. This position is not supported in the case law. NLRB v. Pinkerton's National Detective Agency, Inc., 202 F.2d 230 (9th Cir. 1953). Further, Good Foods does not explain why it then failed to take the opportunity to respond to the Board's show-cause notice following *Burns.*

■ We find no reason to excuse Good Foods' failure to urge its objections before the Board; therefore we are precluded from considering Good Foods' petition for review.

## II

The Union charges that the remedies ordered by the Board[4] are inadequate to expunge the effects of Good Foods' unfair labor practices and to deter Good Foods from further misconduct. The Union asks us to supplement the Board's order with the following remedies:

1. Provide a list of names and addresses of all employees since Good Foods began operation;

2. Mail notices to all these employees;

3. Reimburse discharged employees without deducting their interim earnings; and

4. Pay the Union lost dues and initiation fees.

■ The issues of the Board's power to grant extraordinary remedies and the role of the courts of appeals in supervising that power have become the subject of much litigation and debate in the last few years. *See* Int'l Union of Electrical, Radio & Machine Workers v. NLRB (Tiidee Products, Inc.), 138 U.S.App.D.C. 249, 426 F.2d 1243 (1970), cert. denied, 400 U.S. 950, 91 S.Ct. 239, 27 L.Ed.2d 256 (1970); Int'l Union, UAW v. NLRB (Ex-Cell-O-Corp.), 145 U.S.App.D.C. 384, 449 F.2d 1046 (1971); Food Store Employees Union v. NLRB (Heck's Inc.),

155 U.S.App.D.C. 101, 476 F.2d 546 (1973), cert. granted, 414 U.S. 1062, 94 S.Ct. 567, 38 L.Ed.2d 467 (1973). In view of this controversy, it is surprising and disappointing that the Board failed to discuss the Union's requests for additional remedies in either of its orders. When the Board gives reasons for refusing requests for extraordinary remedies, it is much easier for the reviewing court to defer to the Board's traditional discretion and expertise in formulating remedies. Amalgamated Local Union 355 v. NLRB, 481 F.2d 996 (2d Cir. 1973).

■ Remedies of the sort claimed by the Union are never granted absent a history of unlawful antiunion conduct *(e. g.,* J. P. Stevens & Co. v. NLRB, 417 F.2d 533 (5th Cir. 1969)), or an obviously frivolous defense of company misconduct *(e. g., Tiidee Products, Inc., supra),* or a clear showing that conventional remedies will be inadequate *(e.g.,* Teamsters Local 992 v. NLRB, 138 U.S. App.D.C. 312, 427 F.2d 582 (1970)). Here there is no record of previous violations by Good Foods. The defense of religious belief might be characterized as legally insufficient, but the duties of Good Foods as a successor employer were in doubt while the *Burns* case was pending before the Supreme Court. And the Union has not shown that the remedies ordered by the Board will prove inadequate.

■ 1. List of names and addresses. The Union already has or is entitled under the Board's order to names and addresses of its members who were discharged. As bargaining representative for the present employees, the Union may request a list of their names and addresses. United Aircraft Corp., v. NLRB, 434 F.2d 1198 (2d Cir. 1970), cert. denied, 401 U.S. 993, 91 S.Ct. 1232, 28 L.Ed.2d 531 (1971). The Union can

---

4. The Board's order requires Good Foods to cease and desist from continuing unfair labor practices, and to take these affirmative steps: offer reinstatement to the six butchers and reimburse them for loss of pay or other benefits, bargain collectively with the Union, make whole all employees for loss of benefits through unilateral changes made by Good Foods, pay the Union health, welfare and pension payments earned by the employees and post the usual notices.

easily show a special need if all or most of Good Foods' present employees are Muslims who have been indoctrinated against union membership.

2. Mailing notices. The Union cites two cases where the Board ordered mailings, one to counteract a company mailing of its own notice (J. P. Stevens & Co. v. NLRB, 380 F.2d 292 (2d Cir. 1967) cert. denied, 389 U.S. 1005, 88 S. Ct. 564, 19 L.Ed.2d 600 (1967)), the other to remedy a massive and violent campaign to keep union organizers from communicating with employees (Decaturville Sportswear Co. v. NLRB, 406 F.2d 886 (6th Cir. 1969)). The courts there held the Board did not abuse its discretion in ordering the mailings; we believe there was no abuse of discretion in not ordering such a mailing in this case.

3. Gross back pay. The Union has no precedent for requesting computation of back pay without deduction of earnings from other employment. The District of Columbia Circuit, faced with an identical claim, said such a remedy would be punitive and was unnecessary to assure compliance with the Board's order. Oil, Chemical & Atomic Workers Int'l Union v. NLRB, 144 U.S.App.D.C. 167, 445 F.2d 237 (1971), cert. denied, 404 U.S. 1039, 92 S.Ct. 713, 30 L.Ed.2d 730 (1972). We agree that gross back pay or reimbursement for subtle differences in working conditions is an inappropriate remedy here.

4. Union dues and initiation fees. This remedy must be denied because, with no contract in force, the Board cannot compel the company to accept a security clause. Any loss of dues is speculative. Food Store Employees Union v. NLRB, 155 U.S.App.D.C. 101, 476 F.2d 546 (1973), cert. granted 414 U.S. 1062, 94 S.Ct. 567, 38 L.Ed.2d 467 (1973).

The Board's order, as modified November 30, 1972, is hereby enforced.

Petitions for review denied and order enforced.