Louis J. D'AMICO, Regional Director of Region Five of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

UNITED STATES SERVICE INDUSTRIES, INC., Respondent.

Civ. A. No. 94–1795 PLF.

United States District Court, District of Columbia.

Nov. 3, 1994.

Orrin Dole Baird, Angela Stover Anderson, N.L.R.B., Washington, DC, for Louis J. D'Amico.

Joel Ibert Keiler, Reston, VA, for U.S. Service Industries, Inc.

Orrin Dole Baird, Service Employees Intern. Union, AFL–CIO, Washington, DC, for Service Employees Intern. Union, Local 82 amicus.

## OPINION

FRIEDMAN, District Judge.

This matter is before the Court on the petition of Louis J. D'Amico, Regional Director of Region Five of the National Labor Relations Board, for a temporary injunction pursuant to Section 10(j) of the National Labor Relation Act (the "NLRA"), 29 U.S.C. § 160(j), against Respondent, United States Service Industries, Inc. ("USSI") pending resolution of an unfair labor practice proceeding before the Board. Upon the Court's issuance of an Order to Show Cause why injunctive relief should not be granted, Respondent filed an Answer to the Petition, and the Court heard argument on the issues raised in the Petition and the Answer. On the unopposed motion of Petitioner, and in accordance with Local Rule 205(d), no live testimony was heard by the Court.

The Court granted permission to counsel for both parties to submit additional affidavits and documentary evidence relevant to certain issues raised at argument, and Respondent submitted a supplementary response. The charging party in the Board proceeding, Service Employees International Union, Local 82, AFL–CIO ("SEIU"), sought leave to file a brief as *amicus curiae*, and the Court granted the unopposed motion.

For the reasons set forth in this Opinion and the accompanying Findings of Fact, Conclusions of Law and Order, the Court has determined that Petitioner has met its burden of demonstrating that the issuance of a temporary injunction is just and proper under Section 10(j) of the Act.

## I. BACKGROUND

USSI employs 1400 maintenance and janitorial workers at various sites in Washington, D.C. and Maryland. SEIU is attempting to organize these employees for the purpose of collective bargaining. The workers are mostly Spanish-speaking and many work part-time. SEIU filed unfair labor practice charges against USSI with the Board on June 17, 1993, July 19, 1993, August 17, 1993 (amending the July 19, 1993 charge), November 8, 1993, January 24, 1994, March 16, 1994, and July 11, 1994. Pet.Ex. A, B, C, F, I, M. Each charge was referred to Petitioner as Regional Director of Region Five. The Regional Director, on behalf of the General Counsel of the NLRB, investigated the charges and, during the period from December 23, 1993 through June 3, 1994, issued Complaints and Notices of Hearing relating

to each set of charges. Pet.Ex. D, G, J, L, N, O.

On August 17, 1994, Regional Director D'Amico, on behalf of the Board, petitioned the Court for a temporary injunction under Section 10(j), alleging that there is "reasonable cause" to believe that USSI has engaged in unfair labor practices in violation of Sections 8(a)(1) and 8(a)(3) of the NLRA, 29 U.S.C. §§ 158(a)(1), (a)(3), and that the issuance of temporary injunctive relief is "just and proper" under Section 10(j).[1] Petitioner asserts that the Board's investigation of the six sets of charges filed by SEIU demonstrates that USSI engaged in a continuous course of illegal conduct that interfered with the rights of USSI employees to take part in organizational activities and to present petitions inquiring about wages and benefits.

Specifically, Petitioner alleges that USSI supervisory personnel surveilled, interrogated and threatened workers because of their union activities, prohibited workers from wearing union insignia, restricted the right of employees to talk about the Union, confiscated union literature, promulgated an illegal no solicitation policy, instructed workers to inform supervisors of employees' union activities, failed to reinstate employees who made unconditional offers to return to work after unfair labor practices strikes, reinstated employees into positions that were not substantially equivalent to those they had left, and took adverse job actions against employees for their union activities. Petitioner requests a temporary injunction, requiring Respondent to cease and desist from committing unfair labor violations, to reinstate certain employees, and to disseminate copies of the Court's Order and Opinion to all current and future employees. Petitioner says that an

injunction is necessary to prevent Respondent's illegal conduct from frustrating the very purposes of the NLRA.

Respondent claims that the Union is not engaged in a legitimate organizing campaign. It notes that in over 22 years the Union has not filed a petition for a union election despite having signed up a majority of employees at certain locations. Respondent alleges that SEIU is simply trying to harass USSI into losing business by contacting USSI's clients about the Union and engaging in intermittent, unprotected, economic strikes. Respondent contends that SEIU comes to this Court with unclean hands because of its own alleged unfair labor practices and that the delay in prosecuting the charges in the underlying Board proceeding demonstrates that there is no real need for a temporary injunction.

## II. STANDARD FOR TEMPORARY INJUNCTION UNDER SECTION 10(j)

### A. The History Of Section 10(j)

In the labor field, Congress has determined that labor disputes are to be adjudicated by the National Labor Relations Board, not by a court, and that, when necessary, the Board's orders are to be enforced by the Courts of Appeals. For that reason, the federal courts are generally deprived of jurisdiction to issue injunctions in labor disputes. See Norris–LaGuardia Act, 29 U.S.C. §§ 101–115; McLeod ex rel. NLRB v. General Elec. Co., 366 F.2d 847, 849 (2d Cir.1966), vacated on other grounds, 385 U.S. 533, 87 S.Ct. 637, 17 L.Ed.2d 588 (1967). Section 10(j) of the National Labor Relations Act is a narrow exception to the decision by Congress not to give jurisdiction to the courts.[2] By

---

1. Sections 8(a)(1) and 8(a)(3) provide:

 It shall be an unfair labor practice for an employer
 (1) to interfere with, restrain, or coerce employees in the exercise of rights guaranteed in [Section 7] ...
 (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization....
 29 U.S.C. §§ 158(a)(1), (a)(3).
 Employee rights under the Act are set forth in Section 7, which provides:

 Employees shall have the right to self organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection....
 29 U.S.C. § 157.

2. Section 10(j) provides:

 The Board shall have power, upon issuance of a complaint as provided in subsection (b) of this section charging that any person has en-

this section Congress gave the federal courts the power to grant temporary injunctive relief pending the Board's resolution of an unfair labor practice charge, in order to restore the status quo or to preserve it as it existed before the commencement of the charged unfair labor practices. This authority was provided so that the alleged illegal conduct would not render the labor violations unremediable and make the final resolution by the Board a nullity. *Int'l Union, UAW v. NLRB (Ex–Cell–O Corp.)*, 449 F.2d 1046, 1051 n. 25 (D.C.Cir.1971); *McLeod ex rel. NLRB v. General Elec. Co.*, 366 F.2d at 849.[3] Upon the conclusion of the Board's often protracted and time consuming proceedings, a Section 10(j) injunction expires automatically. *See Levine v. C & W Mining Co., Inc.*, 610 F.2d 432, 436–37 (6th Cir.1979).

■ The parties disagree about the correct test to be applied by a District Court in determining whether to issue a temporary injunction under Section 10(j). Petitioner says that the Court must consider: (1) whether the Board has "reasonable cause to believe" that the violations of the NLRA that Respondent has been charged with have been committed; and (2) whether injunctive relief is "just and proper" to preserve the Board's ability to effectively remedy the violations alleged. Respondent says that the Union must meet the traditional test for the grant of injunctive relief in this jurisdiction. The Court agrees with Respondent.

Section 10(j) provides that, upon the issuance of a complaint charging unfair labor practices by the Board's General Counsel, the Board may petition a United States District Court for appropriate temporary injunctive relief, and the Court may grant such relief "as it deems just and proper." 29 U.S.C. § 160(j). By its terms, Section 10(j) has no "reasonable cause" component. That threshold "reasonable cause" inquiry was adopted by some courts from Section 10(*l*) of the NLRA, 29 U.S.C. § 160(*l*), as an additional requirement for a Section 10(j) injunction, but one less onerous than the more traditional likelihood of success on the merits standard. Section 10(*l*) was enacted at the same time as Section 10(j) and governs situations where a charge has been filed with the Board alleging that one or more specifically enumerated unfair labor practices has occurred. 29 U.S.C. § 160(*l*). In such cases, the NLRB's Regional Attorney must conduct a preliminary investigation, and "[i]f, after such investigation, the officer or regional attorney to whom the matter may be referred has *reasonable cause* to believe such charge is true and that a complaint should issue," the Regional Attorney, on behalf of the Board, is *required* to seek interim relief from a United States District Court even though no complaint has yet been issued by the Board or its General Counsel. 29 U.S.C. § 160(*l*) (emphasis added).

Although there is no similar "reasonable cause" language in Section 10(j), many courts traditionally have incorporated Section 10(*l*)'s "reasonable cause" standard into their Section 10(j) analysis to determine when a Section 10(j) temporary injunction is appropriate. *See, e.g., Frye v. District 1199, Health Care and Social Services Union, Service Employees Int'l Union, AFL–CIO*, 996 F.2d 141 (6th Cir.1993); *Arlook v. S. Lichtenberg & Co.*, 952 F.2d 367, 373 (11th Cir.1992); *Asseo v. Centro Medico Del Turabo, Inc.*, 900 F.2d 445 (1st Cir.1990); *Kobell v. Suburban Lines, Inc.*, 731 F.2d 1076 (3d Cir.1984); *Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185 (5th Cir.1975), *cert. de-*

gaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred ... for appropriate temporary relief or restraining order.... [T]he court ... shall have jurisdiction to grant the Board such temporary relief or restraining order as it deems just and proper.
29 U.S.C. § 160(j).

**3.** In enacting Section 10(j), Congress recognized that

by reason of lengthy hearings and litigation enforcing its orders, the Board has not been able in some instances to correct unfair labor practices until after substantial injury has been done.... Since the Board's orders are not self enforcing, it has sometimes been possible for persons violating the [NLRA] to accomplish their unlawful objective before being placed under any legal restraint and thereby making it impossible or not feasible to restore or preserve the status quo pending litigation. S.Rep. No. 105, 80th Cong., 1st Sess. 8, 27 (1947).

*nied,* 426 U.S. 934, 96 S.Ct. 2646, 49 L.Ed.2d 385 (1976). Courts have applied the "reasonable cause" standard to Section 10(j) petitions, rather than the familiar and traditional likelihood of success/balancing of harms test, as a way of acknowledging the legislative judgment that District Courts in Section 10(j) situations, just as in Section 10(*l*) situations, lack authority to *decide* the merits of the unfair labor practice charge and to emphasize the judicial view that the processes and judgments of the Board, which has primary jurisdiction over such charges, deserve respect and deference. *See Boire v. Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America,* 479 F.2d 778, 792 (5th Cir.1973).

Even apart from this rationale for reading a "reasonable cause" requirement into Section 10(j), Petitioner contends that this Court is bound to apply the two-pronged reasonable cause/just and proper test because it was adopted by the District of Columbia Circuit in *Int'l Union, U.A.W. v. NLRB (Ex–Cell–O Corp.),* 449 F.2d 1046 (D.C.Cir.1971). The Court disagrees with Petitioner's reading of *Ex–Cell–O.* Our Court of Appeals in that case was concerned with the appropriateness of temporary injunctive relief in a Section 10(e) enforcement action pending the employer's appeal of a Board bargaining order to the appellate court, not a Section 10(j) injunction before the District Court. Explaining that the usual strict standards for equitable relief in private actions do not apply when important public purposes are threatened under the NLRA, the Court, in deciding the request for injunctive relief under Section 10(e), held that the Board was required to show only reasonable cause to believe that the Act had been violated rather than irreparable injury and substantial likelihood of success on the merits. 449 F.2d at

1051. It noted in passing that the same test applied under Section 10(j). *Id.* It relied for this proposition on *NLRB v. Aerovox Corp. of Myrtle Beach, South Carolina,* 389 F.2d 475, 477 (4th Cir.1967). That case, like *Ex–Cell–O,* also involved Section 10(e) relief, but the Fourth Circuit in *Aerovox* equated Section 10(e) standards with the Section 10(j) criteria. *Int'l Union, U.A.W. v. NLRB (Ex–Cell–O Corp.),* 449 F.2d at 1051 n. 29.[4]

Because the matter was not before it in *Ex–Cell–O,* the District of Columbia Circuit specifically declined to declare the proper standard to be applied in a Section 10(j) action: "Whatever the appropriate standard is under § 10(j), temporary relief may be granted under § 10(e) upon a showing that the Board is likely to succeed in enforcing its order, and that interim relief is necessary to achieve the remedial purposes of the Act." 449 F.2d at 1052 n. 29. As dictum in a case not involving a Section 10(j) injunction, the discussion of Section 10(j) in *Ex–Cell–O* is not binding on this Court. All that can fairly be said after *Ex–Cell–O* is that the District of Columbia Circuit recognizes that some courts apply the reasonable cause/just and proper test when considering a Section 10(j) application. *See also Coronet Foods, Inc. v. NLRB,* 981 F.2d 1284, 1286 (D.C.Cir.1993). In the absence of any authoritative pronouncement by the District of Columbia Circuit, however, this Court is not bound to read "reasonable cause" into the statute and apply the two-part test advanced by Petitioner.[5]

### B. Recent Judicial Construction Of Section 10(j)

Two circuits recently revisited this issue and rejected "reasonable cause" as a criterion for granting a Section 10(j) temporary injunction, adopting instead the traditional

---

4. Section 10(e) has the same "just and proper" language as does Section 10(j), but, like Section 10(j), it does not include the "reasonable cause" language of Section 10(*l*). 29 U.S.C. § 160(e).

5. This District Court has rarely been called on to resolve a petition for a Section 10(j) temporary injunction and does not appear to have engaged in any independent analysis of the appropriateness of the "reasonable cause" gloss on the statute. *See, e.g., Humphrey v. Retired Persons Pharmacy,* 1973 WL 1236 (D.D.C.1973) (applying rea-

sonable cause/just and proper test); *Penello v. Int'l Union, UMWA,* 88 F.Supp. 935 (D.D.C.1950) (considering whether charged acts are unfair labor violations, whether the record shows a "reasonable probability" that such practices were committed, and whether injunctive relief is just and proper); *Reuben v. FDIC,* 760 F.Supp. 934, 942 (D.D.C.1991) (dictum in case applying traditional equitable discretion under the Federal Service–Labor Management Relations Act).

test for equitable relief as the analytical framework for applying the only statutory requirement under Section 10(j), a determination of what is "just and proper." *See Miller v. California Pacific Medical Center,* 19 F.3d 449, 460 (9th Cir.1994) (en banc) ("[l]ikelihood of success is no longer to be equated with 'reasonable cause' ... nor is it to be measured by whether the factual allegations are not insubstantial and frivolous"); *Kinney v. Pioneer Press,* 881 F.2d 485, 493 (7th Cir.1989) ("[o]nce the Board seeks injunctive relief under § 10(j), the only question for the court is whether the Board has demonstrated that relief is 'just and proper' "). Two other circuits, while retaining the "reasonable cause" threshold, consider traditional equitable criteria in order to determine whether injunctive relief is just and proper. *Asseo v. Pan American Grain Co., Inc.,* 805 F.2d 23, 26 (1st Cir.1986); *Maram ex rel. NLRB v. Universidad Interamericana de Puerto Rico, Inc.,* 722 F.2d 953, 958 (1st Cir.1983); *Kaynard ex rel. NLRB v. Mego Corp.,* 633 F.2d 1026, 1033 (2d Cir.1980).

■ As noted above, while Section 10(j) and Section 10(*l*) were enacted at the same time, and for the same basic purpose of preventing frustration of the purposes of the NLRA and the Board's processes, *see Kinney v. Pioneer Press,* 881 F.2d at 488, the two sections operate quite differently and serve different functions. If charges are filed alleging certain enumerated unfair labor violations (such as secondary boycotts and certain illegal picketing), then Section 10(*l*) directs the Regional Attorney to give preliminary investigation of those charges a priority over other pending investigations. Section 10(*l*) also expressly *requires* the Regional Attorney to seek an injunction on behalf of the Board whenever he or she has "reasonable cause" to believe that any of the enumerated labor violations has occurred. In a Section 10(*l*) situation, the Regional Attorney may not wait until after a charge has been fully investigated and an administrative complaint issued, but must petition immediately for temporary relief. In imposing such a mandatory obligation, Congress both defined when the Regional Attorney's responsibility to seek injunctive relief is activated and set a standard—"reasonable cause"—by which the Court asked to grant such relief could measure the Regional Attorney's judgment.

Section 10(j), on the other hand, *permits* the Board to pursue interim relief for *any* violation, but only after the General Counsel of the Board (usually acting through the Regional Attorney) uncovers enough evidence to warrant the bringing of a formal action by issuance of a complaint. The Regional Attorney then decides in his or her *discretion* whether the case is sufficiently important to call for temporary injunctive relief. *Kinney v. Pioneer Press,* 881 F.2d at 489. Having given the Board's General Counsel discretion not to issue a formal complaint and the Board's Regional Attorney discretion not to seek a temporary injunction, Congress did not need to set a "reasonable cause" trigger for the Board to act, and it did not do so. *See Kinney v. Pioneer Press,* 881 F.2d at 489–90; *Miller v. California Pacific Medical Center,* 19 F.3d at 456. Indeed, "when the Board simply has discretion [whether to seek an injunction] under general section 10(j), we believe the whole panoply of discretionary issues with respect to granting preliminary relief must be addressed by the Court." *Maram ex rel. NLRB v. Universidad Interamericana de Puerto Rico,* 722 F.2d at 958. For Congress to have required that "reasonable cause" be shown would make no sense under Section 10(j) because the "reasonable cause" determination required by Section 10(*l*) focuses on the preliminary investigation before the issuance of a formal complaint, a point that already has passed under Section 10(j), rather than the likely success of prevailing on the merits of the already-filed complaint. *Miller v. California Medical Center,* 19 F.3d at 457.

The Court finds the logic of Judge Easterbrook's reasoning in *Kinney* entirely persuasive on this issue:

Perhaps the problem lies not in the details of "reasonable cause" but in thinking that the subject need be resolved in a suit under § 10(j). The words "reasonable cause" appear in § 10(*l*) but not § 10(j). The Board may invoke § 10(j) at its discretion whenever it believes someone has

transgressed the NLRA, but may do so only after the General Counsel has filed an administrative complaint. Section 10($l$), by contrast, is mandatory. It requires the Board to seek injunctive relief if an investigation yields "reasonable cause" to believe that secondary boycotts or other identified kinds of especially grave violations are in progress. . . .

"Reasonable cause" is the trigger of the Board's duty under § 10($l$). Because § 10($l$) is mandatory, Congress had to establish the boundary of the Board's obligation. It would be silly to require the Board to seek an injunction whenever someone shouts "secondary boycott". Some preliminary investigation is essential. May the Board investigate so thoroughly that the disputants expire in the interim? Congress chose to require the Board to put the subject before a court as soon as it discovers "reasonable cause" to believe that one of the unfair labor practices named in § 10($l$) is in progress. If the Board never turns up "reasonable cause", it need not start the judicial process. "Reasonable cause" under § 10($l$) thus serves two functions: it requires the Board to investigate before filing suit, and it allows the Board to filter out claims of violations that do not justify litigation.

Section 10(j) has a different structure. This law never requires the Board to sue, and the Board may act on its own schedule. First the General Counsel investigates, often a time-consuming process. Only if the General Counsel files a complaint may the Board use § 10(j), and the Board has discretion to disdain this remedy no matter how strong the evidence. Having given the Board unfettered discretion not to sue under § 10(j), Congress did not need the threshold that "reasonable cause" represents under § 10($l$); having told the Board not to file suit under § 10(j) until the administrative complaint has been lodged, Congress did not need to require any further minimum investigation. Per-

haps there are instances where the General Counsel files charges against an employer or union, the Board determines that interim relief is necessary under the circumstances and asks for an injunction, yet nonetheless the case is so thin that not even "reasonable cause" supports the Board's position. But Congress might rationally decide that the search for such instances is not worth the candle. If it had such a view, it would leave "reasonable cause" out of § 10(j) while putting that language in § 10($l$)—which is what Congress did.

*Kinney v. Pioneer Press,* 881 F.2d at 489–90.

As Judge Easterbrook noted, rejecting reliance on the "reasonable cause" threshold does little more than to eliminate the requirement that a District Court engage in repetitive analysis. *Kinney v. Pioneer Press,* 881 F.2d at 490.[6] Once a court considering "reasonable cause" determines that the threshold has been met, it must still determine whether an injunction is "just and proper," a requirement found in the text of Section 10(j) itself. The "just and proper" provision necessarily subsumes the traditional test for injunctive relief; a Section 10(j) temporary injunction is an equitable remedy, and courts traditionally consider the likelihood of success on the merits, the public interest, and the balance of hardships in deciding whether to grant equitable relief. There is no reason to depart from the traditional test for equitable relief under the "just and proper" language of Section 10(j) unless Congress had expressly, or by inescapable inference, otherwise sought to control the exercise of the court's discretion, which it has not done. *See Weinberger v. Romero–Barcelo,* 456 U.S. 305, 320, 102 S.Ct. 1798, 1807, 72 L.Ed.2d 91 (1982) ("A major departure from the long tradition of equity practice should not be lightly implied."); *Hecht Co. v. Bowles,* 321 U.S. 321, 329, 64 S.Ct. 587, 591, 88 L.Ed. 754 (1944).

■ Section 10(j) does not direct district courts to ignore traditional equitable criteria

6. And, as he also noted, despite numerous Section 10(j) decisions, no court of appeals had ever before "discussed reasons pro and con why § 10(j) should (or shouldn't) be treated as containing a requirement of 'reasonable cause.'" *Kinney v. Pioneer Press,* 881 F.2d at 493. *See*

*also Maram v. Universidad Interamericana de Puerto Rico,* 722 F.2d at 957 (noting the "unhappy realization" that no one appears previously to have considered the statutory differences between Section 10(j) and Section 10($l$)).

when evaluating petitions for temporary injunctive relief. Indeed, as the Ninth Circuit has pointed out, "just and proper" is another way of saying "appropriate" or "equitable." *Miller v. California Pacific Medical Center,* 19 F.3d at 458; *see Kinney v. Pioneer Press,* 881 F.2d at 491. "Even though § 10(j) is an exception to the primary jurisdiction of the NLRB over labor disputes, it reflects an intention that the district court will exercise judgment rather than simply sign off on Board requests." *Miller v. California Pacific Medical Center,* 19 F.3d at 458. Therefore, in determining whether interim relief is "just and proper" under Section 10(j), the Court must consider traditional equitable criteria but through "the prism of the underlying purpose of § 10(j), which is to protect the integrity of the collective bargaining process and to preserve the Board's remedial power while it processes the charges." *Id.* at 459–60.

▮ In sum, "reasonable cause" may be the inquiry the Board (or its Regional Attorney) must conduct in determining whether to file a complaint, but the courts, in determining what is "just and proper," should employ the familiar standards customarily used in suits seeking injunctions. *Kinney v. Pioneer Press,* 881 F.2d at 490. The Court therefore concludes that Petitioner need not demonstrate "reasonable cause" in seeking an injunction under Section 10(j). Rather, he must show that temporary injunctive relief is "just and proper." In determining whether the Board has met its burden under that standard, the Court turns to this Circuit's established four-part test for injunctive relief.[7]

## III. SECTION 10(j) TEMPORARY INJUNCTIVE RELIEF IS JUST AND PROPER

▮ According to the traditional formulation for the grant of an injunction in this jurisdiction, a movant is entitled to injunctive relief upon a showing (1) that it has a substantial likelihood of success on the merits; (2) that movant will suffer irreparable harm if the relief is denied; (3) that other interested parties will not suffer substantial harm if injunctive relief is granted; and (4) that the public interest favors the granting of relief or, at least, that the granting of relief is not adverse to the public interest. *Sea Containers Ltd. v. Stena AB,* 890 F.2d 1205, 1208 (D.C.Cir.1989); *Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 842–44 (D.C.Cir.1977); *Virginia Petroleum Jobbers Ass'n v. FPC,* 259 F.2d 921 (D.C.Cir.1958). Under *Holiday Tours,* the factors must be viewed as a continuum—more of one factor compensating for less of another. Thus, the necessary level or degree of possibility of success will vary according to the court's assessment of the other factors; when the other three factors strongly favor interim relief, a court may grant injunctive relief where the moving party has merely made out a "substantial case" on the merits. *Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d at 843. An order maintaining the status quo is appropriate when a serious legal question is presented, the public interest is served, denial of the requested relief would inflict irreparable injury on the movant and when little if any injury would befall the respondent. *Id.* at 844.

### A. The Public Interest

▮ The public interest is always an important factor in the exercise of the Court's equitable discretion under Section 10(j) of the NLRA. *Miller v. California Pacific Medical Center,* 19 F.3d at 460 (citation omitted). The public interest in a case

---

7. Respondent suggests that the National Labor Relations Board under the Clinton Administration has changed its policy and has set too low a standard for petitioning the courts for temporary injunctive relief pursuant to Section 10(j). Resp. Mem. at 8 n. 4. The Board's policy with regard to Section 10(j) petitions has been discussed publicly by William B. Gould IV, Chair of the National Labor Relations Board, and the Board's expanded use of Section 10(j) was acknowledged

by counsel for Petitioner at oral argument. Resp.Ex.H, I. Congress has unquestionably granted the Board the discretion to seek injunctive relief, however, and this case does not provide an appropriate forum for Respondent to question the Board's exercise of its discretion. The only issue that can be decided by this Court is whether the Board is entitled to Section 10(j) relief in *this case.*

involving alleged unfair labor practices under the Act lies in ensuring that the purposes of the statute are furthered and that the processes of the Board, and any ultimate remedies it imposes, are effective. As Judge Joyce Green said in another context:

> [W]here federal statutes are violated, the guiding principle for determining the propriety of equitable relief is whether an injunction is necessary to effectuate the Congressional purpose behind the statute.... the equities to be balanced are not simply those of the litigants, but also the interests of the public as defined by Congress.

*Securities Industry Ass'n v. Board of Governors of Federal Reserve System*, 628 F.Supp. 1438, 1443 (D.D.C.1986).

The National Labor Relations Act was enacted to protect the integrity of the collective bargaining process. "[T]he passage of the statute is itself an implied finding by Congress that violations will harm the public." *Miller v. California Pacific Medical Center*, 19 F.3d at 459. In a Section 10(j) case, "the public interest is to ensure that an unfair labor practice will not succeed because the Board takes too long to investigate and adjudicate the charge." *Id.* at 460. Section 10(j) provides a mechanism for safeguarding this interest by preserving the Board's remedial power while it processes the charge that an unfair labor practice has occurred. *See* S.Rep. at 105, 80th Cong., 1st Sess. 8, 27 (1947); *Int'l Union, UAW v. NLRB (Ex–Cell–O Corp.)*, 449 F.2d at 1051 n. 25; *McLeod ex rel. NLRB v. General Elec. Co.*, 366 F.2d at 849. In this case, many of the alleged unfair labor practices occurred over a year ago, and if the deleterious effects of those violations on the goals and purposes of the NLRA endure, then the public interest requires restoration of the status quo.

Respondent argues that the delay in adjudicating the earliest charges is the Board's fault. The Court finds, however, that the delay in this case is not excessive in view of the allegations of continuing incidents of unfair labor practices, requiring the Board's General Counsel to issue complaints in response to six sets of charges over a 5–month period, and the close relationship among the allegations in the various cases. The Board petitioned for injunctive relief just eleven weeks after the final complaint was issued. *See Pascarelli v. Vibra Screw Inc.*, 904 F.2d 874, 881 (3d Cir.1990); *Blyer v. Domsey Trading Corp.*, 139 L.R.R.M. 2289, 2291, 1991 WL 150817 (E.D.N.Y.1991). "A busy administrative agency [such as the NLRB] cannot operate overnight. The very fact that it must exercise discretion, and that its decision is entitled to presumptive weight ... indicate that it should have time to investigate and deliberate." *Asseo v. Pan American Grain Co.*, 805 F.2d at 29, citing *Maram ex rel. NLRB v. Universidad Interamericana de Puerto Rico, Inc.*, 722 F.2d at 960. The public interest clearly favors the granting of relief when there is a basis for the charge that the NLRA is being violated, as there is here; certainly the granting of relief is not adverse to the public interest. *Cf. Brown v. Artery Org., Inc.*, 654 F.Supp. 1106, 1119 (D.D.C.1987). The public interest will most readily be served by a return to the status quo in order to permit violations of the NLRA to be effectively remedied.

### B. *Irreparable Harm*

Many USSI employees are recent immigrants with a poor command of English and little familiarity with their rights. Petitioner argues that because they are in low-end janitorial jobs, they are particularly vulnerable to coercive conduct by their employers. Petitioner contends that in the absence of a temporary injunction the foreseeable result of continuing coercion and adverse job actions will be to dissipate support for the Union. Adverse job actions aimed at "active and open union supporters ... risk[s] a serious adverse impact on employee interest in unionization," a relevant factor in determining whether an injunction under Section 10(j) is appropriate. *Kaynard v. Palby Lingerie, Inc.*, 625 F.2d 1047, 1053 (2d Cir.1980). The Court concludes that, in the absence of injunctive relief, adverse job actions taken against union supporters and the failure to reinstate unfair labor violation strikers promptly to "substantially equivalent" positions may permanently deprive the workplace of the presence of union supporters and

suggest that workers may be retaliated against for their participation in organizational activities. *See Aguayo v. Tomco Carburetor Co.,* 853 F.2d 744, 749–50 (9th Cir. 1988); *overruled on other grounds by, Miller v. California Pacific Medical Center,* 19 F.3d 449; *Kaynard v. Palby Lingerie Inc.,* 625 F.2d at 1053.

Petitioner urges an especial urgency to its petition because of the inherent difficulty of organizing the janitorial industry in the Washington, D.C. area. Most janitorial contracts have 30 day cancellation clauses and the buildings turn over to new janitorial contractors frequently. Many of the jobs are part-time and the USSI turnover rate is as high as 250%. Petitioner argues that these conditions make it extremely difficult for workers in the janitorial industry to organize and that any dissipation of union support can be a major setback. Thus, if allowed to continue, USSI's activities may deny many of its workers from ever exercising their rights under the NLRA.

■ Petitioner also argues that it is likely to prove that there has been actual harm to the Union campaign because former union supporters have refused to associate with union organizers as a result of USSI's unfair labor violations. Pet.Exs. 22, 23. Proof of such actual harm to the organizing campaign is relevant to the Court's assessment of the Petition. *Arlook v. S. Lichtenberg & Co.,* 952 F.2d 367 (considering possibility of remedial failure, evidence of actual damage to organizing effort, and likely continuation of damage); *Kaynard v. Palby Lingerie, Inc.,* 625 F.2d at 1053. An employer's threats, coercion and adverse job actions may undermine union strength. In the absence of temporary injunctive relief, such conduct may render ineffective any final relief that might be afforded by the Board.

Petitioner suggests that prior history also suggests that USSI's unlawful conduct will continue unabated in the absence of injunctive relief. Petitioner notes that USSI has been found to have violated the NLRA on two recent occasions. In one of these cases, the Board affirmed an Administrative Law Judge's decision finding that USSI violated Section 8(a)(1) of the Act by discharging an employee who had complained about wages, hours and working conditions. *See USSI,* 314 N.L.R.B. No. 8 (1994). In another case, an Administrative Law Judge found that USSI violated Section 8(a)(1) of the Act by making threats and other statements to employees and by failing and refusing to reinstate strikers. *See* Pet.Ex. 40. That case is currently pending before the Board on exceptions. Moreover, Petitioner says USSI's public stance is "in opposition to unionization." Pet.Ex. 44 (letter from USSI Vice President to the *Wall Street Journal* stating that "Washington, D.C., is not a union city and never will be one for janitors."). USSI's asserted recidivism and its public statements, when considered in the light of this highly contentious organizational campaign, suggest that USSI's conduct in violation of the NLRA will not cease in the absence of a temporary injunction. *See Arlook v. S. Lichtenberg & Co.,* 952 F.2d at 372.

Respondent argues that temporary injunctive relief should be denied because the Union comes to the Court with unclean hands. It cites three specific incidents as evidence of the Union's violent activities: an Administrative Law Judge's finding that a sister local engaged in illegal picketing, blocked building entrances, threatened employees, and engaged in other activities in violation of the NLRA, Resp.Ex. D; an "invasion" of USSI's offices by SEIU which is the subject of a pending civil suit in the Superior Court of the District of Columbia, Resp. Ex. C; and affidavit evidence of altercations between USSI managerial staff and two men alleged to be involved in the Union. Resp.Supp.Ex. 3. Each one of these incidents demonstrates how heated and contentious a labor dispute can become. The courts have held, however, that "clean hands" is not a requirement for Board proceedings or a prerequisite for interim injunctive relief. *Henderson v. IUOE Local 701,* 420 F.2d 802, 808 (9th Cir.1969). While Respondent's allegations are not unrelated to the proceedings in this Court, Respondent more appropriately should raise violations of the NLRA by filing charges with the Board or, as it has done in its Superior Court case, bringing a legal action for conduct that does not fall within the NLRA.

Finally, "[i]t should be noted ... that the petitioner here is not one of the parties to the labor-management dispute, but is a representative of the Government of the United States acting to protect the rights of the public." *Penello v. Int'l Union, UMW,* 88 F.Supp. 935, 942 (D.D.C.1950). The relief sought is not designed to help or protect the Union, but to protect all USSI employees and others similarly situated who seek to exercise their rights to self organization for the purposes of collective bargaining or other mutual aid or protection under the National Labor Relations Act.

### C. *Likelihood of Success on the Merits*

■ Although Congress has found that violations of the NLRA will harm the public interest, the Board nevertheless remains obligated under the traditional test for obtaining injunctive relief to demonstrate to the Court that it has a substantial likelihood of success or, at the very least, a substantial case on the merits in the underlying proceeding before the Board; its obligation to make that showing is not lifted simply because the injunction is sought to prevent a violation of an Act of Congress. In this case, Petitioner's allegations demonstrate that, in addition to the public interest favoring preservation of the status quo until the completion of Board proceedings, Respondent's conduct irreparably harms employee rights under the Act. Under this Circuit's approach to preliminary injunctive relief, Petitioner, therefore, must merely make out a substantial case on the merits. *Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d at 843.

■ At the same time, the Court must bear in mind that it is not authorized by Congress to determine the merits of the unfair labor practice cases underlying the petition for a temporary injunction. That is the Board's function. In assessing the evidence in the record in a Section 10(j) case, therefore, the Court is not called on to resolve factual disputes because they will ulti-

mately be resolved by the Administrative Law Judge who is charged with ruling on the underlying cases. Rather, the Court must determine whether the evidence presented, whether by affidavit or witness testimony, demonstrates a substantial likelihood of success on the merits or at least a substantial case on the merits in the underlying complaints pending before the Board.[8]

### 1. *Allegations of Threats, Interrogation and Surveillance*

Petitioner has set forth in its formal complaints, and in the numerous affidavits filed with the Court, facts supporting a litany of unfair labor practices that began at least as early as May, 1993, in connection with the Union's organizing activity. As noted at the outset of this Opinion, the Board has charged that USSI supervisory personnel surveilled or created the impression of surveillance of workers, videotaped workers, interrogated workers about union activities, threatened adverse consequences for union activity, including termination or transfer, prohibited the wearing of union buttons, confiscated union literature, promulgated an illegal no solicitation policy, instructed workers to inform supervisors of union activities, otherwise interfered with organizational activities, failed to reinstate employees who made unconditional offers to return to work after unfair labor practices strikes, reinstated employees into positions that were not substantially equivalent, restricted the right of employees to talk about the Union, threatened to close operations because of union activities, terminated employees, and transferred employees. Petitioner supports each of the alleged incidents with detailed affidavit evidence and seeks a cease and desist order to prevent future conduct by USSI that will interfere with employees' rights under the Act.

■ The Board has consistently adhered to the position that threats of discharge and threats to close operations because of union activity are serious and flagrant forms of

---

**8.** Under the "reasonable cause" standard, which we reject, it was said that the Court was required to view the evidence in the light most favorable to the Board and to determine whether a rational factfinder could rule in its favor. *Arlook v. S.*

*Lichtenberg & Co.,* 952 F.2d 367, 373; *Eisenberg v. Lenape Products, Inc.,* 781 F.2d 999, 1003 (3d Cir.1986); *Fleischut v. Nixon Detroit Diesel, Inc.,* 859 F.2d 26, 29 (6th Cir.1988); *Seeler v. Trading Port, Inc.,* 517 F.2d 33, 36–37 (2d Cir.1975).

interference with the free exercise of employee rights under the NLRA. *Eisenberg v. Honeycomb Plastics,* 125 L.R.R.M. 3257, 3277–78, 1987 WL 109093 (D.N.J.1987). Moreover, interrogation, if it reasonably induces fear, constitutes a violation of the NLRA. *Zipp v. Shenanigans,* 106 L.R.R.M. 2989, 2991, 1980 WL 2195 (C.D.Ill.1980). While some of the other conduct alleged by Petitioner, including the surveillance of employees, might not violate the Act on its own, certain conduct, such as videotaping employees, becomes coercive when viewed together with the Board's other allegations, and interferes with the employees' rights. *Eisenberg v. Honeycomb Plastics Corp.,* 125 L.R.R.M. at 3270. The many affidavits filed by Petitioner detail warnings, threats, interrogation and surveillance, and include the names of USSI supervisory personnel and the times and locations of the incidents. *See* Pet.Ex. 1–35. On the basis of this record the Court concludes that Petitioner has demonstrated a substantial likelihood that Respondent has interfered with the exercise of rights guaranteed by the NLRA in violation of Section 8(a)(1) and that it likely will succeed on the merits of these charges.

### 2. *Allegations of Failure to Reinstate Workers after an Unfair Labor Practices Strike*

Petitioner contends that 21 USSI employees made an unconditional offer to return to work from an unfair labor practices strike but that USSI refused to immediately reinstate them to "substantially equivalent" jobs. Petitioner accuses Respondent of engaging in unfair labor practices by either delaying or by failing to reinstate these 21 employees.[9] Petitioner does not seek back pay for the 21 employees that it contends were not immediately reinstated, but argues that the delay in their reinstatement and the fact that some employees were not reinstated to "substantially equivalent" jobs are themselves unfair labor practices and interfere with employee rights. *See Mastro Plastics Corp. v. NLRB,* 350 U.S. 270, 278, 76 S.Ct. 349, 355, 100 L.Ed. 309 (1956) (unfair labor violation strik-

ers are entitled to reinstatement regardless of whether the employer has replaced them).

Respondent says it had no obligation to reinstate the employees who went on strike because the SEIU strikes were economic strikes motivated by the workers' desires to achieve greater pay and benefits, not unfair labor practice strikes. Respondent produced the affidavit of a USSI employee who was involved in the strikes, who states that she believes the workers were striking in order to gain pay increases and vacation and sick leave benefits. Resp.Ex.B. Petitioner's affidavits demonstrate, however, that the USSI employees were striking to protest a USSI supervisor's refusal to accept an employee petition, interrogation about union activities and threats relating to union involvement, among other unfair labor practices. *See, inter alia,* Pet.Exs. 2, 3, 4, 30.

 The law is clear that an unfair labor practice need only be a contributing motivation for a strike, not the sole motivation. *See, e.g., Allied Industrial Workers, Local 289 v. NLRB,* 476 F.2d 868, 882–83 (D.C.Cir.1973). The fact that there are also economic motivations for a strike does not remove the strike or the strikers from the protection of the NLRA. *See, e.g., General Indus. Emp. Union Local 42 v. NLRB,* 951 F.2d 1308, 1311–12 (D.C.Cir.1991). If the evidence before the Board is consistent with the affidavit evidence before the Court, Petitioner will be able to demonstrate that the employees who went on strike were engaged in an unfair labor practice strike and therefore were entitled to reinstatement.

Respondent also contends that all the workers ultimately were reinstated or given the opportunity to return to work. Petitioner does not directly dispute the fact that some of the workers were given an opportunity to return to work at USSI but argued in open court that USSI's failure to timely reinstate employees to "substantially equivalent" positions, and its warnings to employees that they would not be reinstated, are precisely the kind of threatening and coercive conduct

---

9. Seven of these employees, along with three others not included in the 21, are the subjects of a request for injunctive relief requiring immedi-

ate reinstatement to substantially equivalent positions. This request is discussed below.

that discourages unfair labor practice strikes and are themselves unfair labor practices. Petitioner also argued that because USSI employees work in low wage jobs, and discharged employees must move on to other work as soon as possible in order to survive, any delay in reinstatement may effectively deprive the discriminatees from ever being reinstated, thereby magnifying the unfair labor practice violations. On the record presented, the Court concludes that Petitioner has a substantial likelihood of succeeding on the merits of these claims as well.

### 3. *Employees For Whom Immediate Reinstatement Is Sought*

The Court now turns to the ten employees for whom Petitioner seeks injunctive relief requiring immediate reinstatement. Petitioner contends that Estela Hernandez was terminated and not reinstated after her participation in an unfair labor practices strike. Respondent places the blame for Ms. Hernandez's current lack of employment on her, saying that she simply never returned to work. Respondent agreed in open court, however, that Ms. Hernandez would be rehired, so there is no further need for the Court to consider Petitioner's motion on behalf of Ms. Hernandez.

Ricardo and Cristina Diaz are both currently employed by USSI. Petitioner argues that prior to an unfair labor practices strike Mr. and Ms. Diaz worked in two USSI buildings, but they were each terminated from one of their two USSI jobs after participating in the strike and were told that it was because of their union activities. Respondent explained that to employ Mr. and Mrs. Diaz in the second building would require paying them overtime and that USSI currently has a policy against overtime in order to maintain competitive labor costs. Respondent did not offer a written policy to the Court or demonstrate that the policy is applied to every USSI employee. Given the fact that no limitation on overtime was applied to Mr. and Ms. Diaz prior to their participation in the strike, the Court is persuaded that Petitioner has a substantial likelihood of demonstrating in the NLRB proceeding that Mr. and Ms. Diaz were the victims of an adverse job action because of their union activities.

Four other employees who were not timely reinstated to substantially equivalent jobs and are among those for whom Petitioner seeks immediate reinstatement (Agustin Barrero, Maria Campos, Maria Ester Treminio and Juan Bolanos) have, since their untimely reinstatement, been terminated. Petitioner argues that these terminations were motivated by the workers' participation in unfair labor practice strikes among other union activities.

After they were reinstated, Agustin Barrero and Maria Campos worked in the same building as Maricruz Sorto, who was also involved in union activities. USSI then lost the contract for that building and informed employees that some would be transferred to other worksites and others could try to remain with the new janitorial contractor. USSI refused to transfer Mr. Barrero, Ms. Campos and Ms. Sorto. Ms. Campos specifically says she was told that it was because of their union activities. Pet.Ex. 7. Respondent contends that these three workers simply elected to stay with the new janitorial contractor. Given USSI's refusal to transfer these three workers and the affidavit of Ms. Campos stating that they were denied transfer because of their union activities, however, the Court concludes that Petitioner has made out a substantial case that Mr. Barrero, Ms. Campos and Ms. Sorto were subject to unfair labor practices.

After her reinstatement, Maria Ester Treminio received three warning notices for poor work and was discharged. Prior to her discharge, however, she was told by a supervisor that all the people who took part in the strike had problems. Pet.Ex. 33. After his reinstatement, Juan Bolanos was quoted in an article in the Washington Post regarding USSI working conditions. Thereafter, he requested a leave of absence to deal with some personal problems. A USSI supervisor advised him that the leave would be granted, but because of Bolanos' participation in union activities he would not be returned to the same position at the same site when he returned to work. Mr. Bolanos returned to work one day late, and someone informed

USSI that Bolanos had been attending a union training session in Los Angeles. He was then terminated. Pet.Ex. 5. The record before the Court demonstrates that Petitioner has a substantial likelihood of demonstrating in the underlying proceedings before the Board that the terminations of Ms. Treminio and Mr. Bolanos were in reaction to the employees' involvement in union activities.

Rosa Cristina Flores states in her affidavit that she was interrogated by her supervisor regarding her interest in the Union. When she began wearing a union button, she was threatened with disciplinary action and told not to wear the button. Pet.Ex. 16. Respondent points out, however, that several of Petitioner's affiants cite occasions when they were wearing a union t-shirt or button and no mention of the union insignia was made by USSI supervisory personnel and no action was taken against them on that account. The fact that USSI supervisors did not threaten, harass or even talk to workers about every possible demonstration of support for the Union, however, does not demonstrate that warnings, threats, or coercion did not occur with respect to some employees.

Ms. Flores states in her affidavit that she was issued a written warning for refusing to remove a union button, and when she insisted on taking the written warning with her she was fired for insubordination. Pet.Ex. 16. Respondent claims that Ms. Flores was actually discharged for failing to punch out on the time clock. The Court cannot predict how the Administrative Law Judge will resolve this factual dispute, but the Board, the Board certainly has a substantial case on the merits of this unfair labor practice claim.

Carlos Ipanaque stated in his affidavit that he was questioned about his union activities and was threatened with surveillance and adverse job actions. Pet.Exs. 24, 25. After Mr. Ipanaque's photo appeared in a union flyer, USSI supervisory personnel increased their scrutiny of his work and transferred him to a different USSI worksite. A USSI official told Mr. Ipanaque that he was transferred for his union involvement. Respondent claims that Mr. Ipanaque received six warning notices relating to his work performance prior to his discharge, and USSI's

usual policy is to discharge employees after three warning have been issued. Again, the Administrative Law Judge will find the facts at the hearing, based in part on his assessment of credibility, but at this stage the affidavit evidence is sufficient for the Board to have met its burden on the merits for temporary injunction purposes. As in the case of Ms. Flores, Ms. Treminio and Mr. Bolanos, the affidavit evidence in conjunction with the entire record before the Court tend to indicate that the real reason for USSI's actions with respect to Mr. Ipanaque may well have been to try to prevent the growth of union organizing activities.

Petitioner alleges many additional incidents of USSI supervisors having engaged in harassment and transfers of USSI personnel and other coercive activity to discourage employee involvement in union activities. When viewed as a whole, the affidavit evidence demonstrates that Petitioner has a substantial likelihood of demonstrating before the Administrative Law Judge that the adverse job actions were unfair labor practices in violation of Section 8(a)(3) of the Act. On the basis of the affidavits submitted, the Court concludes that the Board has a substantial likelihood of success on the merits. The Findings of Fact and Conclusions of Law accompanying this Opinion more fully set out the Court's findings.

## IV. CONCLUSION

■ Petitioner has demonstrated that it has at least a substantial case on the merits and, in most cases, a substantial likelihood that it will prove in the Board proceeding that USSI has been using and is likely to continue to use threats, coercion, refusal to timely reinstate unfair labor violation strikers to substantial equivalent jobs, and adverse job actions in order to discourage USSI workers from engaging in their protected right to organize for the purposes of collective bargaining or other mutual aid or protection. There is substantial evidence that the impact of USSI's activities on union activities has already been considerable and, if allowed to continue unabated, will irreparably harm USSI workers by denying them rights protected by the NLRA. Having de-

termined that Petitioner has a substantial likelihood of demonstrating that Respondent has violated and will continue to violate Sections 8(a)(1) and 8(a)(3) of the Act, and that the public interest and the balance of the equities favor temporary injunctive relief pending resolution of the underlying Board proceedings, it is just and proper for the Court to issue a temporary injunction under Section 10(j) of the NLRA, requiring Respondent to cease and desist from engaging in unfair labor practice.

■■■■■ Petitioner further requests that the Court's Opinion and Order be disseminated to USSI employees by various means. USSI employees who previously were involved in union activities have refused to remain involved because they fear that they would lose their job, be transferred, or otherwise suffer adverse job consequences. Pet. Exs. 22, 23. One important purpose of notice is to dispel the coercive effects of the unfair labor practices. *Bloedorn v. Teamsters Local 695*, 132 L.R.R.M. 3102, 3109 (W.D.Wis. 1989). All USSI workers, and those allegedly discharged because of their union activities, must be informed that they have a protected right to engage in concerted activities, to question their employer about wages, benefits and working conditions, and to protest unfair labor violations. Dissemination of this message is crucial in order to prevent USSI employees from being permanently discouraged from taking part in union activities. Because USSI workers are mainly Spanish speaking and work, many part-time, at locations throughout Washington, D.C. and Maryland, distribution of the Court's Order in English and Spanish in order to inform USSI workers that they are entitled to take part in union activities and that USSI is violating the law when it threatens, coerces, or otherwise discourages worker involvement in the Union is just and proper.

■■■■ Respondent does not argue that injunctive terms requiring compliance with NLRA provisions and dissemination of the Court's Opinion and Order would cause it any hardship. In fact Respondent claims that USSI has been abiding by the National Labor Relations Act. Resp.Ex.B, Felice Aff.[10] There being no hardship to USSI in being required to do that which it already says it is doing and to advise all employees of their rights and this employer's obligations under the Act, it is just and proper to order USSI to cease and desist from unfair labor practices and to order that the Court's Opinion and Order be posted and distributed to workers.

Finally, on the basis of the evidence presented, the Court concludes that the ten employees who supported the Union and suffered adverse job actions for their union activities are entitled to immediate reinstatement. Respondent objects to any requirement that it reinstate the individual discriminatees, arguing that reinstatement of the workers will allow the Union to spread dissension and encourage employees to engage in sabotage. While the reinstatement of certain employees may be somewhat burdensome to USSI, that burden does not come close to the burden to the organizing campaign if relief is not granted. Petitioner only seeks reinstatement of ten individuals to a workforce of 1400 which Respondent concedes has a 250% turnover. USSI therefore would seem able to absorb these ten individuals with considerably less difficulty than these workers would experience if required to wait two to three years for a decision on the merits by the Board. USSI has already agreed to rehire one of the individuals, and it currently employs two others, although on a more limited basis than prior to their union activities. Furthermore, if the Union is not successful before the Board, the employer's burden can be lifted. If those workers actively expressing their right to engage in

---

**10.** Respondent argued in open court that an injunction against "garden variety" unfair labor practices, that essentially merely requires compliance with the NLRA, does not serve the purposes contemplated by Section 10(j). Certainly, a temporary injunction under Section 10(j) is considered an extraordinary remedy and should not be granted lightly. *Boire v. Pilot Freight*

*Carriers*, 515 F.2d 1185, 1192 (5th Cir.1975); *Fleischut v. Nixon Detroit Diesel, Inc.*, 859 F.2d 26, 30 n. 4 (6th Cir.1988). Section 10(j), by its terms is not limited to certain types of labor violations, however. Rather, the statute addresses *the effect* of *any* unfair labor practice within the range of violations covered by the NLRA.

concerted activities for the purpose of collective bargaining are not reinstated, however, the Union campaign may be irreparably harmed.

For the reasons set forth in the foregoing Opinion and in the accompanying Findings of Fact, Conclusions of Law and Order, the Court grants the Petition of the Regional Director for a Temporary Injunction under Section 10(j) of the National Labor Relations Act on the terms requested by Petitioner.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER GRANTING TEMPORARY INJUNCTION

This matter is before the Court on the Petition of Louis J. D'Amico, Regional Director of Region Five of the National Labor Relations Board, for a temporary injunction pursuant to Section 10(j) of the National Labor Relations Act (the "NLRA"), 29 U.S.C. § 160(j), pending the final disposition of Cases 5–CA–23629, 5–CA–23724, 5–CA–24030, 5–CA–24168, 5–CA–24291, and 5–CA–24547, pending on Consolidated Complaints of the General Counsel of the Board charging that Respondent United States Service Industries, Inc. ("USSI"), has engaged in, and is engaging in, unfair labor practices in violation of Sections 8(a)(1) and 8(a)(3) of the NLRA. Upon the issuance of an Order to Show Cause why temporary injunctive relief should not be granted, Respondent filed an Answer to the Petition. The Court heard argument on the issues raised by the Petition and the Answer on September 12, 1994. Upon the unopposed motion of Petitioner, and in accordance with Local Rule 205(d), no live testimony was heard by the Court.

The Court granted permission to counsel for both parties to submit additional affidavits and documentary evidence relevant to certain specific issues raised during argument, and Respondent submitted a supplementary response to the Petition. The charging party in the Board proceeding, Service Employees International Union, Local 82, AFL–CIO ("SEIU") moved to file a brief as *amicus curiae*, and the Court granted the unopposed motion.

All parties were afforded full opportunity to be heard, to present affidavit and documentary evidence bearing on the issues, and to argue the facts and the law. Upon full consideration of the Petition, the Answer, the supporting documentation, the arguments of counsel, the applicable law, and upon the entire record, the Court makes the following:

### FINDINGS OF FACT

1. Petitioner is the Regional Director of Region Five of the Board, an administrative agency of the United States government, and files his Petition for and on behalf of the Board.

2. The Court has jurisdiction of this matter under Section 10(j) of the NLRA, 29 U.S.C. § 160(j).

3. (a) On June 17, 1993, under the provisions of the NLRA, the SEIU filed an unfair labor practice charge with the Board alleging in Case 5–CA–23629 that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Sections 8(a)(1) and 8(a)(3) of the NLRA.

(b) On July 19, 1993, under the provisions of the NLRA, the Union filed an unfair labor practice charge with the Board alleging in Case 5–CA–23724 that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Sections 8(a)(1) and 8(a)(3) of the NLRA.

(c) On August 17, 1993, under the provisions of the NLRA, the Union filed a first amended unfair labor practice charge with the Board alleging in Case 5–CA–23724 that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Sections 8(a)(1) and 8(a)(3) of the NLRA.

4. The unfair labor practice charges described in paragraphs 3(a), 3(b) and 3(c) were referred to Petitioner, as the Regional Director of Region Five of the Board, whose office is located in Baltimore, Maryland.

5. On January 14, 1994, upon the unfair labor practice charges referred to in paragraphs 3(a), 3(b) and 3(c), the General Counsel of the Board, on behalf of the Board, by the Petitioner as the Regional Director of Region Five of the Board, issued an Order Consolidating Cases, Consolidated Complaint

and Notice of Hearing under Section 10(b) of the NLRA, alleging that Respondent has engaged in, and is engaging in, unfair labor practices as charged within the meaning of Sections 8(a)(1) and 8(a)(3) of the NLRA.

6. On November 8, 1993, under the provisions of the NLRA, the Union filed an unfair labor practice charge with the Board alleging in Case 5–CA–24030 that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Sections 8(a)(1) and 8(a)(3) of the NLRA.

7. The unfair labor practice charge described in paragraph 6 was referred to Petitioner, as the Regional Director of Region Five of the Board.

8. On December 23, 1993, upon the unfair labor practice charge referred to in paragraph 6, the General Counsel of the Board, on behalf of the Board, by the Petitioner as the Regional Director of Region Five of the Board, issued a Complaint and Notice of Hearing under Section 10(b) of the NLRA, alleging that Respondent has engaged in, and is engaging in, unfair labor practices as charged within the meaning of Sections 8(a)(1) and 8(a)(3) of the NLRA.

9. On January 24, 1994, under the provisions of the NLRA, the Union filed an unfair labor practice charge with the Board alleging in Case 5–CA–24168 that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Sections 8(a)(1) and 8(a)(3) of the NLRA.

10. The unfair labor practice charge described in paragraph 9 was referred to Petitioner, as the Regional Director of Region Five of the Board.

11. (a) On March 8, 1994, upon the unfair labor practice charge referred to in paragraph 9, the General Counsel of the Board, on behalf of the Board, by the Petitioner as the Regional Director of Region Five of the Board, issued a Complaint and Notice of Hearing under Section 10(b) of the NLRA, alleging that Respondent has engaged in, and is engaging in, unfair labor practices as charged within the meaning of Sections 8(a)(1) and 8(a)(3) of the NLRA.

(b) On May 19, 1994, the Petitioner as the Regional Director of Region Five of the Board, issued an Order Consolidating Cases and Setting Hearing Date in Cases: 5–CA–23629, 5–CA–23724, 5–CA–24030 and 5–CA–24168.

12. On March 16, 1994, under the provisions of the NLRA, the Union filed an unfair labor practice charge with the Board alleging in Case 5–CA–24291 that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Sections 8(a)(1) and 8(a)(3) of the NLRA.

13. The unfair labor practice charge described in paragraph 12 was referred to Petitioner, as the Regional Director of Region Five of the Board.

14. (a) On May 31, 1994, upon the unfair labor practice charges referred to in paragraphs 3(a), (b), (c) and 12, the General Counsel of the Board, on behalf of the Board, by the Petitioner as the Regional Director of Region Five of the Board, issued an Order Consolidating Cases, Complaint and Notice of Hearing under Section 10(b) of the NLRA, alleging that Respondent has engaged in, and is engaging in, unfair labor practices as charged within the meaning of Sections 8(a)(1) and 8(a)(3) of the NLRA.

(b) On June 3, 1994, the Petitioner as the Regional Director of Region Five of the Board, issued an Order Consolidating Cases in Cases: 5–CA–23629, 5–CA–23724, 5–CA–24030, 5–CA–24168 and 5–CA–24291.

15. On July 11, 1994, under the provisions of the NLRA, the Union filed an unfair labor practice charge with the Board alleging in Case 5–CA–24547 that Respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Sections 8(a)(1) and 8(a)(3) of the NLRA.

16. The unfair labor practice charge described in paragraph 15 was referred to Petitioner, as the Regional Director of Region Five of the Board.

17. On August 10, 1994, upon the unfair labor practice charge referred to in paragraph 15, the General Counsel of the Board, on behalf of the Board, by the Petitioner as the Regional Director of Region Five of the Board, issued a Complaint and Notice of Hearing under Section 10(b) of the NLRA,

alleging that Respondent has engaged in, and is engaging in, unfair labor practices as charged within the meaning of Sections 8(a)(1) and 8(a)(3) of the NLRA.

18. Petitioner has demonstrated that it has a substantial likelihood of proving in the Board proceeding that:

(a) Respondent is a Delaware corporation that maintains an office and place of business in Washington, D.C., within this judicial district. Respondent provides janitorial services to offices and buildings in Washington, D.C. During the preceding twelve months, a representative period, in the course and conduct of its business operations, Respondent derived gross revenues in excess of $1,000,000, and purchased and received goods and supplies valued in excess of $5,000 directly from points located outside the District of Columbia.

(b) Respondent is now, and at all material times has been, an employer engaged in commerce within the meaning of Sections 2(2), (6) and (7) of the NLRA.

(c) The Union is an unincorporated association in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment and other terms and conditions of employment.

(d) The Union is now, and has been at all material times, a labor organization within the meaning of Section 2(5) of the NLRA.

19. Petitioner has demonstrated that it has a substantial likelihood of proving in the Board proceeding that:

(a) At all times material herein, the following named persons have occupied the position set forth opposite their respective names, and are now, and have been agents of the Respondent within the meaning of Section 2(13) of the NLRA:

| Name | Position |
|---|---|
| Sandra Aguilar | Supervisor |
| Sandra Alfaro | Supervisor |
| Richard Amstutz | Vice–President of Operations |
| Henry Aparicio | Supervisor |
| Raul Arro | Vice–President/Area Manager/Operations Manager |
| Christino Ayala | Supervisor |
| Richard Benavid | Supervisor |
| Fernando Becerra | Area Manager |
| Antonio Castro | Supervisor |
| Jose Cea | Supervisor |
| Henry Claros | Supervisor |
| Joel Felrice | Vice–President of Finance and Administration |
| Richard Gallager | Vice–President |
| Fernando Garcia | Supervisor/Area Manager/Operations Manager |
| Walter Hancock | Manager 401 M Street, SW |
| Carlos Hernandez | Supervisor |
| Henry Lara | Supervisor, Giant Food Building |
| Victor Lobos | Supervisor, Giant Food Building |
| Juan Lopez | Supervisor |
| Javier Marios | Official, Main Office |
| James Matthews | President |
| Alby Mery | Supervisor |
| Denis Parrales | Supervisor |
| Mauricio Portillo | Supervisor |
| Rosa Saravia | Supervisor |
| Antonio _____ (last name currently unknown to Petitioner) | Supervisor |
| Carlos _____ (last name currently unknown to the Petitioner) | Supervisor at 529 14th St., N.W. |
| Floy _____ (last name currently unknown to the Petitioner) | Supervisor at 401 M Street, N.W. |
| Luis _____ (last name currently unknown to Petitioner) | Supervisor |
| Melvin _____ (last name currently unknown to Petitioner) | Supervisor |
| Porfirio _____ (last name currently unknown to Petitioner) | Supervisor |

Sandra _____ Project Manager at
(last name currently 1730 Pennsylvania
unknown to Petitioner) Avenue, N.W.

Towana _____ Supervisor at
· (last name currently 401 M Street, N.W.
unknown to Petitioner)

As to Victor Lobos and Henry Lara, Respondent claims that they were not USSI supervisory personnel. The record demonstrates, however, that these persons were responsible for supervising USSI employees, granting leave, and transporting workers. Accordingly, Petitioner has made out a substantial case that it will prove Victor Lobos and Henry Lara were supervisory personnel during the relevant period.

20. Petitioner has demonstrated that it has a substantial likelihood of proving or, at the very least, a substantial case on the merits before the Board that:

(a) Respondent, by Mauricio Portillo, at Respondent's 3000 K Street, N.W., Washington DC location:

(1) On or about May 5, 1993, created the impression that Respondent was engaging in the surveillance of employees' activities on behalf of the Union;

(2) On or about May 25, 1993, threatened employees by telling them that their activities on behalf of the Union would result in adverse consequences;

(3) On or about May 25, 1993, told employees they were not allowed to wear union buttons.

(b) On or about May 17, 1993, Respondent by Fernando Becerra at Respondent's 1445 New York Avenue, N.W., Washington, DC location:

(1) Created the impression that Respondent was engaging in the surveillance of employees' activities on behalf of the Union;

(2) Ordered employees to hand over to him union literature and to tell other employees not to sign a union petition;

(3) Verbally promulgated an illegal no solicitation policy by telling employees they could only engage in union activities outside the building;

(4) Told employees to inform him if they heard anything from the Union.

(c) Respondent, by Fernando Garcia:

(1) On or about May 20, 1993, at Respondent's 1331 Pennsylvania Avenue, N.W., Washington, DC location, interrogated employees by telling them he wanted to find out who delivered to the tenant of the building a petition drafted by the Union;

(2) On or about May 25, 1993, at Respondent's 655 15th Street, N.W., Washington, DC location, interrogated employees regarding the petition described above in paragraph 20(c)(1), and threatened employees with written warnings for their refusal to identify the employee who had delivered the petition.

(d) Respondent, by Henry Claros, at Respondent's 529 14th Street, N.W., Washington, DC location:

(1) On or about May 26, 1993, threatened employees by telling them that he was told by Respondent Supervisor Fernando Garcia to inform them they would be discharged if they went on strike again;

(2) On or about May 28, 1993, threatened employees by telling them that Respondent's Vice President Gallagher would not tolerate another strike and that the next time Respondent would fire all of them;

(3) On or about June 1 through 3, 1993, interrogated employees regarding their activities on behalf of the Union.

(e) Respondent, by Antonio Castro at its 1800 Massachusetts Avenue, N.W., Washington, DC location:

(1) On or about July 2, 1993, promulgated and since that time has maintained a rule forbidding employees from talking during their hours of work;

(2) On or about July 8, 1993, interrogated its employees regarding their union membership, activities and sympathies and about the union membership, activities and sympathies of other employees.

(f) Respondent, at its 1420 New York Avenue, N.W., Washington, DC location:

(1) Acting through Luis _____, whose last name is currently unknown to the Petitioner, on or about June 16, 1993, interrogated its employees regarding their union membership, activities and sympathies, and about the

union membership, activities and sympathies of other employees.

(2) Acting through Richard Gallagher and Raul Arroyo, on or about June 16, 1993, engaged in surveillance of employees engaged in union activities.

(g) Respondent, at its 529 14th Street, N.W., Washington, DC location:

(1) Acting through Porfirio _____, whose last name is currently unknown to the Petitioner, on or about July 9, 1993, threatened its employees with discharge because they participated in a strike;

(2) Acting through Henry Claros, at various times in July 1993, interrogated its employees regarding their union membership, activities and sympathies, and about the union membership, activities and sympathies of other .employees;

(3) Acting through Henry Claros, at various times in July 1993, created the impression among its employees that their union activities were under surveillance;

(4) Acting through Melvin _____, whose last name is currently unknown to the Petitioner, at various dates in or around July 1993, interrogated its employees regarding their union membership, activities and sympathies, and about the union membership, activities and sympathies of other employees;

(5) Acting through Melvin _____, whose last name is currently unknown to the Petitioner, at various times in or around July 1993, threatened its employees with elimination of part of its operation because they joined the Union and engaged in a strike;

(6) Acting through Juan Lopez, on or about July 6, 1993, interrogated its employees regarding their union membership, activities and sympathies, and about the union membership, activities and sympathies of other employees;

(7) Acting through Henry Claros, in or around early June 1993, interrogated its employees regarding their union membership, activities and sympathies, and about the union membership, activities and sympathies of other employees;

(8) Acting through Henry Claros, in or around early June 1993, promulgated, and has since maintained a rule forbidding its employees from any and all contact with union representatives;

(9) Acting through Henry Claros, during or around June 1993, interrogated its employees regarding their union activities, membership and sympathies, and about the union activities, membership and sympathies of other employees;

(10) Acting through Henry Claros, at various times between late May 1993 and on or about June 14, 1993, interrogated its employees regarding their union membership, activities and sympathies, and about the union membership, activities and sympathies of other employees.

(11) Acting through Henry Claros, between late May 1993 and on or about June 14, 1993, threatened its employees with discharge if they did not cease their support of the Union.

(12) Acting through Fernando Garcia and Juan Lopez, on or about July 1, 1993, restrained and coerced its employees by telling them they had been permanently replaced because they engaged in a strike to protest unfair labor practices committed by Respondent.

(h) On or about June 30, 1993, Respondent, by Fernando Garcia, at its main facility at 1424 K Street, N.W., Washington, DC, restrained and coerced its employees by telling them they had been permanently replaced because they engaged in a strike to protest unfair labor practices committed by Respondent.

(i) On or about June 18, 1993, Respondent, by Antonio Castro, at its worksite at 1800 Massachusetts Avenue, N.W., Washington, DC location, threatened its employees with transfer if they engaged in a strike.

(j) From on or about June 14, 1993, until on or about July 1, 1993, certain employees of Respondent at worksites at Respondent's 529 14th Street, N.W., and 1331 Pennsylvania Avenue, N.W., Washington, DC locations, ceased work concertedly and engaged in a strike.

(k) From on or about June 18, 1993 to July 1, 1993, certain employees of Respondent

employed at its 1420 New York Avenue, N.W., Washington, DC location, ceased work concertedly and engaged in a strike.

(*l*) From on or about June 22, 1993 to July 1, 1993, certain employees of Respondent employed at its 1800 Massachusetts Avenue, N.W., Washington, DC location, ceased work concertedly and engaged in a strike.

(m) The strikes described above in paragraphs 20(j) through 20(*l*) were caused by Respondent's unfair labor practices described above in paragraphs 20(a) through 20(i) inclusive, and were prolonged by these same unfair labor practices.

(n) On or about July 1, 1993, by letter, the following employees, who had engaged in the strikes described above in paragraphs 20(j) through 20(*l*), made an unconditional offer to return to their former positions of employment:

| | |
|---|---|
| Agustin Barrero | Saul Herrera |
| Juan Bolanos | Santos Juares |
| Maria D. Campos | Jose Osmin Lopez |
| Nelson Canales | Maria Mancia |
| Olga Carranza | Jose Rovira |
| Nemecio Cotzc | Felicita Saravia |
| Rosendo Donis | Jose Saravia |
| Jose Galicias | Alfonso Sorto |
| Milton Guzman | Maria Ester Treminio |
| Alma Hernandez | Rosa Urrutia |
| Maria Hernandez | |

(o) Effective July 1, 1993, Respondent failed and refused to offer full and immediate reinstatement to the employees named above in paragraph 20(n), and/or has not returned them to substantially equivalent positions.

(p) On or about October 11, 1993, Respondent, by Jose Cea at Respondent's facility located at 6323 Georgia Avenue, told employees that because they had signed with the Union and gone on strike they were not allowed to work at two buildings.

(q) On or about October 11, 1993, Respondent terminated the employment of Ricardo Diaz and Cristina Diaz its employees, at the 6223 Georgia Avenue facility.

(r) On or about December 13, 1993, Respondent, acting through Carlos _____, whose last name is currently unknown to the Petitioner, at Respondent's facility located at 529 14th Street, NW, told an employee that the employee and other employees had problems because they had engaged in a strike.

(s)(1) On or about November 29, 1993, Respondent, by Sandra _____, whose last name is currently unknown to the Petitioner, issued a written warning to Maria Ester Treminio;

(2) On or about December 7, 1993, Respondent, by Christino Ayala, at Respondent's 1730 Pennsylvania Avenue, NW facility, issued a written warning to Maria Ester Treminio;

(3) On or about December 22, 1993, Respondent terminated the employment of Maria Ester Treminio.

(t) Respondent, by Raul Arroyo:

(1) On or about November 8, 1993, at 1850 M Street, NW, Washington, DC, threatened employees by telling them that after their return from a leave of absence they would be transferred to another building and their current position could not be reserved because they had participated in activity on behalf of the Union;

(2) On or about January 31, 1994, at 1424 K Street, NW, Washington, DC, interrogated employees about their union activity;

(3) On or about January 31, 1994, at 1424 K Street, NW, Washington, DC, informed employees that they had not been transferred because of their participation in activities on behalf of the Union and threatened that other employees who engaged in union activities would eventually be terminated;

(4) On or about February 28, 1994, at 1700 Pennsylvania Avenue, NW, Washington, DC, informed employees that they had been transferred because of their union and/or protected concerted activities.

(u) In or around November and December 1993, and January 1994, Respondent, by Henry Aparicio and Sandra Alfaro, at 655 15th Street, NW, Washington, DC, increased surveillance of employees' work because of their activities on behalf of the Union.

(v) In or around November 1993, Respondent, by Henry Aparicio, at 655 15th Street, NW, Washington, DC:

(1) Told employees that they were being watched more closely because they had engaged in activities on behalf of the Union and threatened that employees could lose their jobs because of their union activities;

(2) Interrogated employees about their union membership and sympathies and threatened employees by saying they could lose their jobs for supporting the Union.

(w) On or about November 22, 1993, Respondent discharged its employee Juan Bolanos.

(x) On or about January 27, 1994, Respondent discharged its employees Maria Campos, Agustin Barrero and Maricruz Sorto.

(y) Respondent engaged in the conduct described above in paragraphs 20(o), 20(q), 20(s), 20(w), and 20(x) because the employees named therein engaged in activities on behalf of, and supported the Union, and in order to discourage employees from engaging in these activities.

(z)(1) In or around January 1994, Respondent's employee Carlos Ipanaque, at 655 15th Street, NW, Washington, DC, concertedly complained to Respondent regarding the wages, hours and working conditions of Respondent's employees, by complaining about the manner in which Respondent was investigating allegations of theft.

(2) On or about February 3, 1994, Respondent transferred its employee Carlos Ipanaque.

(3) On or about February 28, 1994, Respondent, issued a warning to its employee Carlos Ipanaque.

(aa) Respondent engaged in the conduct described above in paragraph 20(z)(2) and (3) because Carlos Ipanaque engaged in the protected concerted conduct described in paragraph 20(z)(1), and to discourage employees from engaging in these or other protected concerted activities, and because Carlos Ipanaque engaged in activities on behalf of, and supported the Union, and in order to discourage employees from engaging in these activities.

(bb) Respondent, at the Giant Food Building in Landover, Maryland:

(1) Acting through Victor Lobos, on or about May 18, 1994, threatened to fire employees because they had gone to Respondent's office wearing union tee shirts;

(2) Acting through Henry Lara, on or about June 6, 1994, informed employee Estela Hernandez, that she was discharged because of her union membership;

(3) On or about June 6, 1994, discharged Estela Hernandez.

(cc) Respondent, at a building which it cleaned at 401 M Street, SW, Washington, DC:

(1) Acting through Towana _____, whose last name is currently unknown to the Petitioner, during May 1994, interrogated employees regarding their interest in the Union;

(2) Acting through Towana _____, whose last name is currently unknown to the Petitioner, on June 7, 1994, and on various other dates, repeatedly threatened to discharge employees because they wore union buttons;

(3) Acting through Walter Hancock, on June 7, 1994, told employees that they could not wear union buttons;

(4) Acting through Walter Hancock, on June 7, 1994, interrogated employees about their union activities;

(5) On or about June 8, 1994, issued Rosa Cristina Flores a written warning because she wore a union button;

(6) On or about June 9, 1994, discharged Rosa Cristina Flores.

(dd) Respondent, at its main office, acting through Fernando Becerra, on or about June 15 or 16, 1994, stated that employees could be fired for wearing union buttons.

(ee) Respondent, at a building which it cleans at 1700 Pennsylvania Avenue, NW, Washington, DC:

(1) Acting through Sandra Aguilar, at various times during March 1994, threatened employees that joining the Union would cause them to lose their jobs;

(2) On or about April 7, 1994, issued a warning to Carlos Ipanaque;

(3) On or about April 26, 1994, issued a warning to Carlos Ipanaque;

(4) On or about April 27, 1994, discharged Carlos Ipanaque.

(ff) Respondent engaged in the conduct described above in paragraphs 20(bb), 20(cc), and 20(ee) because the employees named therein engaged in activities on behalf of, and supported the Union, and in order to discourage employees from engaging in these activities.

21. Petitioner has demonstrated that it has a substantial likelihood of proving or, at the very least, a substantial case on the merits before the Board that, by the acts and conduct set forth in paragraph 20(a) through and including paragraph 20(ff), and by each of those acts, Respondent has interfered with, restrained and coerced and is interfering with, restraining and coercing its employees in the exercise of their rights guaranteed in Section 7 of the Act, and has discriminated and is discriminating in regard to hire, tenure and terms and conditions of employment of employees to discourage membership in the Union, and thereby Respondent has engaged in, and continues to engage in, unfair labor practices within the meaning of Sections 8(a)(1) and 8(a)(3) of the NLRA.

22. It may be fairly anticipated that unless enjoined, Respondent will continue the acts and conduct above, or similar acts and conduct, in violation of Sections 8(a)(1) and 8(a)(3) of the NLRA, and will continue to interfere with, restrain and coerce employees in the exercise of the rights guaranteed them by Section 7 of the NLRA and to discriminate against employees in regard to their hire or tenure of employment or their terms and conditions of employment to discourage membership in a labor organization. Injunctive relief is warranted to prevent the irreparable destruction of the Union's organizational campaign among the Respondent's employees. Petitioner has demonstrated that it has a substantial likelihood of proving or, at the very least, a substantial case on the merits before the Board that Respondent reacted to its employees attempts to unionize by:

(a) engaging in the serious unfair labor practices alleged in paragraphs 20(a) through 20(ff), including;

(b) discriminatorily discharging union activists Juan Bolanos in November 1993 and Maria Ester Treminio in December 1993, both of whom had been unlawfully denied immediate reinstatement in July 1993 after striking against Respondent;

(c) refusing to transfer and thereby discriminatorily terminating employees Maria Campos, Agustin Barrero and Maricruz Sorto in January 1994, where Respondent linked the action to their participation in a strike;

(d) discriminatorily discharging Ricardo Diaz and Christina Diaz from their second jobs in October 1993, because they had participated in a strike at another Respondent location;

(e) discriminatorily transferring union activist Carlos Ipanaque in February 1994;

(f) discriminatorily discharging Estela Hernandez in May 1994 because of her union membership;

(g) discriminatorily discharging union activist Rosa Cristina Flores in June 1994; and

(h) discriminatorily discharging union activist Carlos Ipanaque in April 1994.

### CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties and the subject matter of this proceeding, and under Section 10(j) of the NLRA is empowered to grant temporary injunctive relief, 29 U.S.C. § 160(j).

2. Respondent USSI has been, at all times material herein, an employer engaged in commerce within the meaning of Sections 2(2), (6) and (7) of the NLRA, 29 U.S.C. §§ 152(2), (6) and (7).

3. On the basis of the evidence presented and the law, Petitioner has demonstrated that he has a substantial likelihood of success on the merits of his complaints; and that Petitioner and the union will suffer irreparable harm if relief is denied; that Respondent will not suffer substantial harm if injunctive relief is granted; and that the public interest favors the granting of such relief.

4. By the acts and conduct described in Findings of Fact 20(a) through 20(ff), Respondent interfered with, restrained and coerced and is interfering with, restraining and coercing its employees in the exercise of their rights guaranteed in Section 7 of the NLRA, 29 U.S.C. § 157, and has discriminated and is discriminating in regard to hire, tenure and terms and conditions of employment of employees to discourage membership in the Union, and thereby Respondent has engaged in, and continues to engage in, unfair labor practices within the meaning of Sections 8(a)(1) and 8(a)(3) of the NLRA, 29 U.S.C. §§ 158(a)(1), (a)(3).

5. To preserve the issues for the orderly determination as provided for in the NLRA, and to avoid the serious consequences set forth above, it is therefore just and proper, for the purposes of effectuating the policies of the NLRA and avoiding substantial, irreparable and immediate injury to such policies of the NLRA, to the employees involved and to the public interest, and in accordance with the remedial purposes and provisions of Section 10(j) of the NLRA, 29 U.S.C. § 160(j), that pending final disposition of the administrative matters involved in NLRB Cases 5–CA–23629, 5–CA–23724, 5–CA–24030, 5–CA–24168, 5–CA–24291, 5–CA–24547 pending before the Board that Respondent be enjoined and restrained from the commission, continuation or repetition of the acts and conduct set forth above in Findings of Fact 20(a) through 20(ff), acts or conduct in furtherance or support thereof, or like or related acts or conduct, the commission of which in the future is likely or may fairly be anticipated from Respondent's acts and conduct in the past.

6. Furthermore, to avoid the serious consequences set forth above, it is just and proper, for the purposes of effectuating the purposes and policies of the NLRA and avoiding substantial, irreparable and immediate injury to those policies, to the employees and the Union involved, and to the public interest, and in accordance with the purposes of Section 10(j) of the NLRA, 29 U.S.C. § 160(j), that pending final disposition of the administrative matters involved in NLRB Cases 5–CA–23629, 5–CA–23724, 5–CA–24030, 5–CA–24168, 5–CA–24291, 5–CA–24547 now pending before the Board, the Respondent be directed, enjoined and restrained as follows:

## *ORDER GRANTING TEMPORARY INJUNCTION*

This case came to be heard on the Petition of Louis J. D'Amico, Regional Director of Region Five of the National Labor Relations Board, for and on behalf of the Board, for a temporary injunction under Section 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j), pending the final adjudication by the National Labor Relations Board of the underlying unfair labor violation claims. The Court, upon consideration of the Petition, the Answer, the supporting documentation, the arguments of counsel, and the entire record in the case, has made and filed its Opinion, Findings of Fact and Conclusions of Law, finding and concluding that Petitioner has demonstrated that it has a substantial likelihood of proving or, at the very least, a substantial case on the merits before the Board that Respondent has engaged in, and is engaging in, acts and conduct in violation of Sections 8(a)(1) and 8(a)(3) of the NLRA, affecting commerce within the meaning of Sections 2(6) and (7) of the NLRA, that such conduct will likely be repeated or continued unless enjoined, and that such conduct will frustrate the purposes of the NLRA by rendering the charged unfair labor violations unremediable.

Now therefore, upon the entire record, it is ORDERED that

1. Respondent United States Service Industries, Inc., its officers, representatives, agents, servants, employees, attorneys, and all persons acting in concert or participation with it or them, at all the Respondent's metropolitan Washington, D.C., service and janitorial contract locations, including those which are obtained during the life of this injunction, and pending the final disposition of the matters involved now pending before the Board, to cease and desist from:

(a) threatening to transfer employees because of their union activities;

(b) threatening to deny employees' requests for transfers, and threatening to

transfer them, because of their union activities;

(c) threatening to deny employees the opportunity to work because of their union activities;

(d) threatening to fire employees if they go on strike or engage in other union activity;

(e) interrogating employees;

(f) telling employees they cannot wear union buttons;

(g) confiscating union literature;

(h) promulgating no-solicitation rules and policies, including forbidding employees to talk during their working hours, and telling employees they could only engage in union activity outside of the Employer's buildings;

(i) telling employees they cannot contact union representatives;

(j) threatening to eliminate portions of the Employer's operations because of employees' union or protected strike activity;

(k) threatening employees and telling employees that the Employer would permanently replace employees because they participate in unfair labor practice strikes;

(*l*) telling employees to inform supervisors of other employees' union activities, and threatening employees who refuse to do so; surveilling employees, or creating the impression that they are being surveilled;

(m) threatening to fire employees for wearing union buttons and because employees had gone to Respondent's office wearing union tee shirts.

(n) threatening employees that joining the Union would cause them to lose their jobs and telling employees that they are fired because of their union membership.

(o) discharging, transferring or refusing to transfer employees, issuing warnings, or otherwise discriminating against employees because they join, support or assist the Union or because they engage in concerted protected activity; and,

(p) in any other manner interfering with, restraining or coercing employees in the exercise of their Section 7 rights.

2. Affirmatively, requiring Respondent, its officers, representatives, agents, servants, employees, attorneys, and all persons acting in concert or participation with them, at all the Respondent's metropolitan Washington, D.C., service and janitorial contract locations, including those which are obtained during the life of this injunction, and pending the final disposition of the matters involved now pending before the Board, to:

(a) Offer interim reinstatement to employees Juan Bolanos, Maria Ester Treminio, Maria Campos, Agustin Barrero, Maricruz Sorto, Ricardo Diaz, Christina Diaz, Estela Hernandez, Rosa Cristina Flores and Carlos Ipanaque to their former positions, without prejudice to their former seniority or other rights and privileges, displacing, if necessary, any other person(s) hired or reassigned by the Respondent as their replacements, or, if those positions no longer exist, to substantially equivalent positions.

(b) Post copies of this Opinion and Order, both dated November 3, 1994, in English and in Spanish translation: (i) at all buildings and locations where Respondent currently cleans or otherwise provides janitorial services in the Washington, D.C., metropolitan area; (ii) at all future work locations Respondent commences during the term of the Court's Order in this Section 10(j) injunction proceeding; and (iii) at its own offices in the Washington, D.C., metropolitan area. In each case, Respondent shall post copies of this Court's Opinion and Order at locations where employer notices to employees are customarily posted. Such postings shall be maintained during the Board's administrative proceeding, free from all obstructions and defacements. Agents of the Board shall be granted reasonable access to the Respondent's offices, facilities and work locations to monitor compliance with this posting requirement.

(c) Promptly mail copies of the Court's Opinion and Order, both in English and in a Spanish translation approved by the Petitioner, the Regional Director of Region Five of the Board, (i) to all employees alleged as discriminatees, and (ii) to all Respondent's current janitorial employees, and (iii) to all janitorial employees hired while this Order is in effect.

(d) Within twenty (20) days of the issuance of this Order, file with this Court, with a copy to the Petitioner, the Regional Director of Region Five of the Board, an affidavit from a responsible official of Respondent, setting forth with specificity the manner in which Respondent has complied with the terms of Court's decree. The affidavit shall include the exact locations where the documents described in paragraphs (b) and (c) have been posted, and all the names and addresses of the employees to whom copies of the Court's Opinion and Order were mailed.

(e) Inform the Petitioner, the Regional Director of Region Five of the Board, within ten (10) days of the commencement of any and all new metropolitan Washington, DC work, the locations where posting of notices to janitorial employees is permitted by the landlords or owners of those locations, and showing the date of commencement of the Respondent's operations, the exact locations, the mailing addresses and telephone numbers of the locations, and the names, mailing addresses and telephone numbers of the landlords or owners of the locations; and it is

FURTHER ORDERED that this injunction shall remain in effect pending the final adjudication by the National Labor Relations Board in NLRB Cases 5–CA–23629, 5–CA–23724, 5–CA–24030, 5–CA–24168, 5–CA–24291, 5–CA–24547.

SO ORDERED.